## WHITELEY *v.* WARDEN, WYOMING STATE PENITENTIARY

No. 136.   Argued January 13, 1971—Decided March 29, 1971

HARLAN, J., delivered the opinion of the Court, in which DOUGLAS, BRENNAN, STEWART, WHITE, and MARSHALL, JJ., joined.  BLACK, J., filed a dissenting opinion, in which BURGER, C. J., joined, *post*, p. 570.  BLACKMUN, J., filed a dissenting statement, *post*, p. 575.

*William J. Knudsen, Jr.,* argued the cause for petitioner.  With him on the briefs was *Richard A. Mullens.*

*Jack Speight,* Assistant Attorney General of Wyoming, argued the cause for respondent.  With him on the brief was *James E. Barrett,* Attorney General.

MR. JUSTICE HARLAN delivered the opinion of the Court.

Petitioner Whiteley, in 1965, was convicted in the District Court for the Second Judicial District of the State of Wyoming on charges of breaking and entering and being an habitual criminal.[1]  Both at his arraignment and at trial Whiteley challenged the constitutionality of the use of evidence seized during a search incident to an arrest which he claimed was illegal.  The trial court overruled petitioner's motion to suppress, and on appeal the Supreme Court of Wyoming affirmed.  *Whiteley* v. *State,* 418 P. 2d 164 (1966).  This proceeding commenced with a petition for habeas corpus in the United States District Court for the District of Wyoming, which was denied on November 25, 1968.[2]  *Whiteley* v. *Wyoming,* 293 F. Supp. 381.  On appeal, the United States Court of Appeals for

---

[1] He was given concurrent sentences on the breaking and entering charges of one to 10 years and, in consequence of the recidivist charge, imprisonment for life.

[2] Prior to commencing federal habeas corpus proceedings, Whiteley had filed a petition for post-conviction relief pursuant to the Wyoming statutes.  No appeal was taken from the denial of that petition.

the Tenth Circuit affirmed. *Whiteley* v. *Meacham*, 416 F. 2d 36 (1969). We granted certiorari, limiting the writ to the issue of the constitutionality of the arrest and ensuing search and seizure. 397 U. S. 1062 (1970).[3] We reverse the judgment of the Tenth Circuit for the reasons stated herein.

## I

The circumstances surrounding petitioner's arrest and the incidental search and seizure, as stated by the Wyoming Supreme Court, 418 P. 2d 164, 165–166, are as follows:[4]

> "On November 23, 1964, certain business establishments in Saratoga were broken into, including the Rustic Bar and Shively's Hardware, the offenses being investigated by the Carbon County Sheriff [Sheriff Ogburn] who, acting on a tip, the next day signed a complaint charging defendant and another with breaking and entering the building identified

---

[3] In his petition for habeas corpus, Whiteley raised several other issues which had previously been advanced in his state petition for post-conviction relief, but not in his direct appeal to the Supreme Court of Wyoming. On these other issues, both lower federal courts held that failure to appeal the denial of his state post-conviction petition constituted nonexhaustion of state remedies. Petitioner sought to raise the exhaustion issue in his present petition for certiorari, but, as noted in text, we granted the writ limited to the search and seizure issue decided by the lower federal courts.

[4] At the outset of the federal habeas corpus proceeding now before us, both parties entered into the following stipulation, App. 10:

"IT IS HEREBY STIPULATED by and between the parties through their respective counsel that, pursuant to the agreement of the parties in open court on February 16, 1968, both sides will rely exclusively on the record before the trial court in the original case of the State of Wyoming v. Harold Whiteley . . . and any and all parts of the record on appeal to the State of Wyoming . . . in the hearing on the merits of this case before the [U. S. District Court]."

as the Rustic Bar. This complaint was made before a justice of the peace at approximately 11:30 a. m. on the 24th, and a warrant issued. After the investigation, the sheriff put out a state item on the radio to pick up two suspects of the breaking and entering, defendant and another. The message went to the network at Casper and was transmitted over the State, received by the Albany County Sheriff's Office and communicated to the Laramie Police Department, the message giving names and descriptions of the two persons and advising the type of car probably being driven and the amount of money taken, including certain old coins with the dates. Late at night on November 24, a Laramie patrolman, in reliance on the information in the radio item, arrested the defendant and his companion. At the time, the patrolman had no warrant for defendant's arrest nor search warrant. The officer together with a deputy sheriff, who had come up in the meantime, searched the car and removed a number of items introduced in evidence, including tools and old coins, identified at the trial as taken from Shively's Hardware. . . ."

Sheriff Ogburn's complaint, which provided the basis for the arrest warrant issued by the justice of the peace, is as follows:

"I, C. W. Ogburn, do solemnly swear that on or about the 23 day of November, A. D. 1964, in the County of Carbon and State of Wyoming, the said Harold Whiteley and Jack Daley, defendants did then and there unlawfully break and enter a locked and sealed building [describing the location and ownership of the building]." App. 28.

A state item 881, the bulletin which Sheriff Ogburn

put out on the radio and which led to petitioner's arrest and search by the Laramie patrolman, is as follows:

"P & H for B & E Saratoga, early A. M. 11–24–64. Subj. #1. Jack Daley, WMA, 38, D. O. B. 2–29–[26], 5'10'', 175, med. build, med. comp., blonde and blue. Tat. left shoulder: 'Love Me or Leave Me.' #2. Harold Whitley, WMA, 43, D. O. B. 6–22–21, 5' 11'', 180, med. build, fair comp. brown eyes. Tat. on right arm 'Bird.' Poss. driving 1953 or 1954 Buick, light green bottom, dark top. Wyo. lic. 2-bal. unknown. Taken: $281.71 in small change, numerous old coins ranging from .5¢ pieces to silver dollars, dated from 1853 to 1908. Warrant issues, will extradite. Special attention Denver. . . ." App. 31.[5]

## II

The decisions of this Court concerning Fourth Amendment probable-cause requirements before a warrant for either arrest or search can issue require that the judicial officer issuing such a warrant be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant.[6] *Spinelli* v. *United States,* 393 U. S. 410 (1969); *United States* v. *Ventresca,* 380 U. S. 102 (1965); *Aguilar* v. *Texas,* 378 U. S. 108 (1964); *Rugendorf* v. *United States,* 376 U. S. 528 (1964); *Jones* v. *United States,* 362 U. S. 257 (1960); *Giordenello* v. *United States,* 357 U. S. 480 (1958). In the instant case—so far as the record stipulated to by the parties

[5] A second version of state item 881 is identical in all relevant respects except that it omits reference to the arrest warrant. See App. 37.

[6] In *Ker* v. *California,* 374 U. S. 23 (1963), the Court held that the same probable-cause standards were applicable to federal and state warrants under the Fourth and Fourteenth Amendments. In *Mapp* v. *Ohio,* 367 U. S. 643 (1961), the Court held the exclusionary rule was applicable to state prosecutions.

reveals [7]—the sole support for the arrest warrant issued at Sheriff Ogburn's request was the complaint reproduced above.[8] That complaint consists of nothing more than the complainant's conclusion that the individuals named therein perpetrated the offense described in the complaint. The actual basis for Sheriff Ogburn's conclusion was an informer's tip, but that fact, as well as every other operative fact, is omitted from the complaint. Under the cases just cited, that document alone could not support the independent judgment of a disinterested magistrate.

The State,[9] however, contends that regardless of the sufficiency of the complaint to support the arrest warrant, the Laramie police officer who actually made the

[7] See n. 4, *supra*.

[8] The dissent seems to imply that "this record shows" that Sheriff Ogburn received the description of the car contained in the radio bulletin from someone who also informed him that he also saw the car at the scene of the crime. *Post,* at 570. The record wholly fails to support any such implication. Sheriff Ogburn, who testified on four separate occasions at the trial, see R. 105–112, 187–191, 310–314, 335–337, said nothing of the sort. Only one other witness, Leonard Russell Marion, testified to having given Ogburn any information about the car prior to Whiteley's arrest; Marion never testified to seeing the car near the scene of the crime. R. 317–322, 329–330. Indeed, it is quite apparent from reading Marion's testimony that his observations of Whiteley on the day of the robbery took place at his own house. R. 320–321.

More importantly, even the dissent apparently concedes that as far as the record in this case reveals, the only information Sheriff Ogburn communicated to the magistrate issuing the warrant was contained in his written complaint reproduced above. Under the cases of this Court, an otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate. See *Aguilar* v. *Texas,* 378 U. S. 108, 109 n. 1. A contrary rule would, of course, render the warrant requirements of the Fourth Amendment meaningless.

[9] Since this is a federal habeas corpus proceeding, the State is technically not a party.

arrest possessed sufficient factual information to support a finding of probable cause for arrest without a warrant. In support of this proposition, the State argues that a reviewing court should employ less stringent standards for reviewing a police officer's assessment of probable cause as a prelude to a warrantless arrest than the court would employ in reviewing a magistrate's assessment as a prelude to issuing an arrest or search warrant.[10] That proposition has been consistently rejected by this Court. *United States* v. *Ventresca,* 380 U. S., at 105–109; *Aguilar* v. *Texas,* 378 U. S., at 110–111; *Jones* v. *United States,* 362 U. S., at 270–271. And the reason for its rejection is both fundamental and obvious: less stringent standards for reviewing the officer's discretion in effecting a warrantless arrest and search would discourage resort to the procedures for obtaining a warrant. Thus the standards applicable to the factual basis supporting the officer's probable-cause assessment at the time of the challenged arrest and search are at least as stringent as the standards applied with respect to the magistrate's assessment. See *McCray* v. *Illinois,* 386 U. S. 300, 304–305 (1967).

Applying those standards to the instant case, the information possessed by the Laramie police officer at the time of arrest and search consisted of: (1) the data contained in state bulletin 881, reproduced *supra;* (2) the knowledge, obtained by personal observation, that two men were driving a car matching the car described in the radio bulletin; (3) the knowledge, possessed by one of the arresting officers, that one of the people in the car was Jack Daley, App. 71; (4) the knowledge, acquired

---

[10] "The legal principles relied upon by the state throughout this entire litigated process have been based on the premise that a law enforcement officer may make a warrantless arrest if he has requisite probable cause, which can be something less than the requisite probable cause that must be presented to a judicial officer prior to the issuance of an arrest or search warrant." Brief for Respondent 6.

by personal observation, that the other individual in the car fitted the description of Whiteley contained in state bulletin 881; and (5) the knowledge, acquired by the officer after stopping Whiteley, that he had given a false name.[11]

This Court has held that where the initial impetus for an arrest is an informer's tip, information gathered by the arresting officers can be used to sustain a finding of probable cause for an arrest that could not adequately be supported by the tip alone. *Draper* v. *United States,* 358 U. S. 307 (1959). See *Spinelli* v. *United States,* 393 U. S. 410 (1969). But the additional information acquired by the arresting officers must in some sense be corroborative of the informer's tip that the arrestees committed the felony or, as in *Draper* itself, were in the process of committing the felony. See the opinions of the Court and that of MR. JUSTICE WHITE concurring in *Spinelli* v. *United States, supra,* and p. 423. In the present case, the very most the additional information tended to establish is that either Sheriff Ogburn, or his informant, or both of them, knew Daley and Whiteley and the kind of car they drove; the record is devoid of any information at any stage of the proceeding from the time of the burglary to the event of the arrest and search that would support either the reliability of the informant or the informant's conclusion that these men were connected with the crime. *Spinelli* v. *United States, supra; McCray* v. *Illinois, supra; Aguilar* v. *Texas, supra.*

---

[11] After arresting Whiteley and Daley, the officers searched the car and discovered in the car's interior the old coins taken in one of the burglaries and described in the radio bulletin. In addition, they found burglar's tools in the trunk of the car. Of course, the discoveries of an illegal search cannot be used to validate the probable-cause judgment upon which the legality of the search depends.

The State, however, offers one further argument in support of the legality of the arrest and search: the Laramie police relied on the radio bulletin in making the arrest, and not on Sheriff Ogburn's unnamed informant. Clearly, it is said, they had probable cause for believing that the passengers in the car were the men described in the bulletin, and, in acting on the bulletin, they reasonably assumed that whoever authorized the bulletin had probable cause to direct Whiteley's and Daley's arrest. To prevent arresting officers from acting on the assumption that fellow officers who call upon them to make an arrest have probable cause for believing the arrestees are perpetrators of a crime would, it is argued, unduly hamper law enforcement.

We do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest.

In sum, the complaint on which the warrant issued here clearly could not support a finding of probable cause by the issuing magistrate. The arresting officer was not himself possessed of any factual data tending to corroborate the informer's tip that Daley and Whiteley committed the crime.[12]   Therefore, petitioner's arrest vio-

---

[12] The arrest warrant issued at about noon on November 24, 1964. See App. 53. State bulletin 881 was broadcast at 3:03 p. m. that same day. App. 31. It is apparent that Sheriff Ogburn did not himself acquire additional corroborative data possibly supporting a probable-cause arrest after securing the warrant.

lated his constitutional rights under the Fourth and Fourteenth Amendments; the evidence secured as an incident thereto should have been excluded from his trial. *Mapp* v. *Ohio,* 367 U. S. 643 (1961).

## III

There remains the question as to the proper disposition of this case. The State urges us to remand so that it will have an opportunity to develop a record which might show that the issuing magistrate had factual information additional to that presented in Sheriff Ogburn's complaint. Brief for Respondent 8–9. Yet the State concedes, as on the record it must, that at every stage in the proceedings below petitioner argued the insufficiency of the warrant as well as the lack of probable cause at the time of the arrest. Brief for Respondent 4. Knowing the basis for petitioner's constitutional claim, the State chose to try those proceedings on the record it had developed in the state courts. See n. 4, *supra.* Its sole explanation for this state of affairs is that "the state has felt, based on precedent and logic, that no court would accept the legal reasoning of petitioner." Brief for Respondent 9. In the circumstances of this case, that justification, as we have shown, is untenable.

Pursuant to our authority under 28 U. S. C. § 2106 to make such disposition of the case "as may be just under the circumstances," we reverse the judgment of the Tenth Circuit and remand with directions that the writ is to issue unless the State makes appropriate arrangements to retry petitioner.[13] Cf. *Giordenello* v. *United States,* 357 U. S., at 487–488.

*It is so ordered.*

---

[13] The State makes a halfhearted attempt to argue that the introduction of the illegally seized evidence was harmless error. The

MR. JUSTICE BLACK, with whom THE CHIEF JUSTICE joins, dissenting.

With all respect to my Brethren who agree to the judgment and opinion of the Court, I am constrained to say that I believe the decision here is a gross and wholly indefensible miscarriage of justice. For this reason it may well be classified as one of those calculated to make many good people believe our Court actually enjoys frustrating justice by unnecessarily turning professional criminals loose to prey upon society with impunity. Here is what this record shows:

On the night of November 23, 1964, several establishments, including a bar and hardware store were broken into at the village of Saratoga, Wyoming. Some old coins and other items were taken from the hardware store. Some people saw petitioner and his companion that night in or near Saratoga. The next morning the sheriff, who lived at Rawlins, the county seat, another village in sparsely settled Carbon County,[1] investigated the burglaries. In addition to viewing the scene of the crimes, the sheriff received a rather detailed description of the car, including a portion of the license plate number, said to have been used by the burglars. The sheriff also received a tip that persuaded him that petitioner and his companion, Jack Daley, were probably guilty of one of the burglaries. Upon the strength of this tip, coupled

evidence, of course, was damning, to say the least. See n. 10, *supra.* The only other evidence implicating Whiteley was his accomplice's testimony. It is clear that the error cannot be said to be harmless under applicable standards. *Chapman* v. *California,* 386 U. S. 18 (1967); *Harrington* v. *California,* 395 U. S. 250 (1969).

Contrary to the implications in the dissenting opinion, see *post,* at 571, no witness at trial other than the accomplice placed Whiteley "near the scene of the crime" on the night of the robbery.

[1] The population of Carbon County according to the 1970 census is about 13,000 persons.

with his observation of the scene of the crimes and the description of the vehicle, the sheriff personally appeared before the justice of the peace in Rawlins to secure a warrant for the arrest of petitioner and his companion. After securing the warrant he authorized and sent a statewide radio police alert describing the men and their car and calling upon officers to arrest them. The night of November 24, policemen at Laramie, Wyoming, learned that petitioner's companion, Daley, was in the city. They located and stopped the car described in the alert, finding it occupied by two men matching the descriptions contained in the message. One of the officers personally recognized Jack Daley. In response to a request for identification, Harold Whiteley gave police a false name. At that point the two men were arrested and the car was searched. Old coins, tools, and other items later identified at trial as having been taken from the burglarized hardware store were found in the trunk and interior of the car.

At the trial the seized items were introduced into evidence over petitioner's objection. In addition, petitioner was identified as having been near the scene of the crime on the night of November 23.[2] Jack Daley, petitioner's companion, told the jury in vivid detail how he and Whiteley jimmied open the back door and burglarized the hardware store.[3] Petitioner took the stand

---

[2] Leonard Russell Marion testified at trial that he had seen Whiteley at his home in Saratoga, a town of about 1,000 population, on the day of the robbery. Mr. Marion further testified that he observed Whiteley's car and a portion of the license plate number and gave that information to the sheriff. See R. 317–321, 329–330. The majority fails to recognize that Saratoga is a very small country town and that strangers are most unlikely to move about unnoticed. Something obviously aroused Mr. Marion's suspicion or else he would not have reported the observation of petitioner and his car to the sheriff.

[3] Daley's testimony was not uncorroborated. He testified in detail about the trip from Laramie to Saratoga where the crime was com-

and presented an alibi defense which was discredited by several witnesses including Jack Daley. Petitioner was convicted and sentenced to 10 years for burglary and concurrently to life imprisonment under Wyoming law because of his several prior convictions. It was charged and proved that he had been convicted of three felonies and the record shows that he was 43 year of age and had already served six times in the penitentiary. The Supreme Court of Wyoming affirmed the conviction September 15, 1966, *Whiteley* v. *State,* 418 P. 2d 164, holding that the Laramie officers had a right and duty to arrest the men in their vehicle because they had reasonable ground to believe the men had committed a burglary and that they had the fruits of their crime in the car, citing among other cases *Carroll* v. *United States,* 267 U. S. 132 (1925). See also *Chambers* v. *Maroney,* 399 U. S. 42 (1970).

I think it is a distortion of the Fourth Amendment's meaning to hold that this petitioner's arrest and the seizure of the goods he had stolen were an "unreasonable arrest" and an "unreasonable seizure." In deciding this question it should always be remembered that the Fourth Amendment itself does not expressly command that evidence obtained by its infraction should always be excluded from proof.

There was certainly probable cause to arrest this man. The store was burglarized. The county was a sparsely settled one in which people knew one another. Petitioner, whose previous life would appear to have earned for him the title of professional in the stealing vocation,

---

mitted with stops in Medicine Bow and Elk Mountain. Ernest Hornden testified at trial that Daley and Whiteley were in the Dip Bar in Medicine Bow on the night of November 23, 1964, shortly before the burglary. Another witness, LeRoy Hansen, testified that Whiteley was in Elk Mountain on the day of the burglary, see R. 315–316.

was seen around the store with his car the very night of the burglary. Undoubtedly this longtime county sheriff (who appears still to be sheriff) was bound to know petitioner. The tip he received was so persuasive to him that in the performance of his official duty he was willing to assume all the risk incident to having petitioner arrested. It surely cannot be said that when a sheriff, with his prestige and standing, and bond against civil suit, communicates an emergency message to arrest men in cars as burglars, a policeman must stand supinely by while two people denounced as burglars go along their way. Of course these policemen had enough information from the sheriff to have probable cause to arrest petitioner.

My disagreement with the majority concerning the wisdom and constitutional necessity of a "little trial" before a magistrate or justice of the peace prior to the issuance of a search or arrest warrant is a matter of record. See *Aguilar* v. *Texas,* 378 U. S. 108, 116 (1964) (Clark, J., dissenting); *Spinelli* v. *United States,* 393 U. S. 410, 429 (1969) (BLACK, J., dissenting). But even accepting those decisions, *arguendo,* they do not control the disposition of this case which involves the apprehension of criminals in an automobile moving away from the scene of the crime less than 24 hours after its commission. The sheriff's belief that Whiteley and Daley were guilty, even if it was only a "suspicion" as the majority seems to label it, gave police officers proper grounds to stop petitioner's car and inquire about its passengers. *Terry* v. *Ohio,* 392 U. S. 1 (1968). And once the officers stopped the car and positively identified Jack Daley, they had every reason to believe that Whiteley was lying and attempting to escape detection when he reported a false name. At least at that point, if not before, the Laramie police had probable cause to arrest petitioner and Daley. With probable cause to arrest the men, they also had

authority to search the car. Such a search could be justified under either of two theories. Even under *Chimel* v. *California,* 395 U. S. 752 (1969), the search of an automobile incident to the arrest of the occupants is permissible. And in this very case, the officers found a fully loaded handgun in the glove compartment. The search was also permissible under the "movable vehicle" exception to the usual requirement for a search warrant. *Chambers* v. *Maroney,* 399 U. S. 42 (1970); *Carroll* v. *United States,* 267 U. S. 132 (1925). I consider it a travesty of justice to turn this man out of jail or give him a new trial six years after he was convicted.[4]

*Fay* v. *Noia,* 372 U. S. 391 (1963), does not, in my judgment, justify what the Court is doing. The trial court passed on this issue of validity of petitioner's arrest some years ago. Later he asked for relief through state post-conviction procedures on the same ground and his claim was rejected. He has now sought relief through federal habeas corpus. After the United States District Court and the Court of Appeals rejected his unlawful-search claim, bringing to 10 the number of state and federal judges who have consistently and unanimously rejected petitioner's claim, this Court reverses his judgment of conviction, although petitioner does not, of course, now allege his innocence. As I said in *Kaufman* v. *United States,* 394 U. S. 217, 231 (BLACK, J., dissenting), the *Fay* v. *Noia* remedy should be limited as it

---

[4] The search in this case took place on November 24, 1964. Although I disagreed with *Spinelli* v. *United States,* 393 U. S. 410 (1969), I have always believed that constitutional decisions should be fully retroactive in their application. See *Linkletter* v. *Walker,* 381 U. S. 618, 640 (1965) (BLACK, J., dissenting). I am thus glad to see that the majority has apparently decided to apply constitutional decisions retroactively even when they do not affect the "integrity of the fact-finding process," see *id.,* at 639, and will greatly burden the administration of justice, see *Desist* v. *United States,* 394 U. S. 244, 250 (1969).

was by its own facts, and convictions should remain final unless a petitioner seeking habeas corpus alleges that he can currently show he was innocent. There is not even a suspicion here that this hardened criminal is innocent and I would let him stay in confinement to serve his sentence.

MR. JUSTICE BLACKMUN agrees with much that is said by MR. JUSTICE BLACK and also dissents from the opinion and judgment of the Court.