19546

The STATE, Respondent, v. Samuel JACKSON et al., Appellants

(194 S. E. (2d) 181)

*Messrs. Ernest A. Finney, Jr., David W. Goldman* and *O. Lang Hogan, Jr.,* of Sumter, *for Appellants,*

*Messrs. R. King McLeod, Sol.,* and *Robert W. Burkett, Asst. Sol.,* of Sumter, *for Respondent,*

January 15, 1973.

BRAILSFORD, Justice:

Five young men were put to their trial in Sumter County in December, 1971, on charges of conspiracy to commit robbery and robbery while armed with deadly weapons. After the trial had commenced, Jackie Peoples and Richard Fludd entered pleas of guilty to robbery. Samuel Jackson, Frank Walker and Wade W. Harris, who are the appellants here, were convicted on both counts and sentenced by the court to concurrent terms of five years' and ten years' imprisonment.

The actual robbery was committed by Peoples and Fludd at the Sharolyn Motel on U. S. Highway 76, about eight miles west of Sumter, at about 12:30 A. M. on September 29, 1971. According to the testimony of Jackson and Peoples, the only defendants who took the stand, the five men had left the Campus Club in the City of Columbia earlier in the evening in an automobile owned and driven by Samuel Jackson. They first went to the Riverside Club (which they found to be closed) on U. S. Highway 76 near the Wateree River bridge. They then drove to a bus station in Florence at the request of Harris, who said that he wanted to meet a friend. When the friend was not forthcoming, they drove back through Sumter, and Peoples requested that he and Fludd be let out at a trailer park, near the motel and a store known as the Zippy-Mart, to see a friend, and that they be picked up again in about twenty minutes. These two had spotted the motel on the way to Florence and plotted to rob it, but, according to the testimony of Jackson and Peoples, the other occupants of the car were unaware of this design. After the robbery, according to Peoples, he and Fludd waited for some twenty minutes for the car to return before spotting it parked at the Zippy-Mart. They entered the back seat of the car and placed therein three pistols which had been used in the robbery and the coins, some of which were wrapped in rolls, taken from the motel. When

the other three men emerged from the Zippy-Mart and returned to the car, the five defendants headed for Columbia with Jackson again driving. They were apprehended at Lower Richland School, thirty-six miles west of Sumter.

Appellants charge that the court erred in refusing their motion to suppress as evidence, upon the constitutional ground of unlawful search and seizure, the pistols and money which were taken by the officers at the scene of their arrest. The claim is that the warrantless arrest was unlawful because not founded upon probable cause; hence, the arrest could not support a search of the automobile and the seizure of the pistols and money.

We must review the circumstances which led to the seizure of the challenged evidence. That the motel had been robbed by two negro men was promptly reported to the Sumter County Sheriff's department by the night clerk. The dispatcher received the call at 12:32 A. M. and radioed Deputy Sheriff Nesbitt who was patrolling in the City of Sumter. By radio, Nesbitt dispatched other officers to cover routes of escape into the City, while he sped on toward Columbia in an effort to overtake any car traveling in that direction. There was very little traffic, and Nesbitt pushed his patrol car to the limit, driving in excess of one hundred miles per hour most of the time. As he entered the Wateree River swamp, he spotted the taillights of an automobile for the first time since passing the motel, some ten miles behind. He estimated that the car was about a mile ahead of him. He continued to drive his patrol car to the limit trying to overtake the car, and advised the dispatcher of his pursuit of it, inferentially, requesting assistance. Nesbitt lost sight of the lights once or twice, but as he topped the overpass at U. S. Highway 601, some five miles west of the river, in the officer's words, "I saw the car in full view ahead of me and continued on until I got within, I guess, a hundred yards of the car and I leveled off behind it and the car was running in the area of seventy to seventy-five miles an hour. I followed it on for a ways and pulled up on to the left side.

He was in the right lane and I pulled over in the left lane and pulled up to the side of it enough that I could look into the windows on the left side. From where I was beside the car, I could see two people, one was the driver and one that was sitting beside him, was sitting real close. The driver had, appeared to have his arm around the one in the center. The two that I observed looked to me as if they were both men." The car slowed down after the officer made this observation, and continued toward Columbia at speeds varying from thirty to fifty-five miles per hour, with Nesbitt following. At Lower Richland School, Nesbitt observed a police vehicle parked on the shoulder and another in the school yard. He turned on his emergency lights so that the officers would recognize his unmarked car. Within moments, police cars which had assembled at this point as the result of interceptions of transmissions between Nesbitt and his dispatcher, formed a roadblock and forced the car occupied by the defendants to stop. Only two persons were visible to the officers until the car slowed for the roadblock, whereupon, in the words of SLED Agent Cook "heads started coming up out of the seats." The officers converged on the stopped car with weapons drawn and ordered the occupants "to come out of the car with their hands over their heads." As they did so, a pistol was taken from Peoples' left hand, and all of the occupants were frisked for weapons, but not otherwise searched.

When Agent Cook approached the car and looked inside, he observed in plain view on the back seat on a sweater "U. S. coins and currency and also money in rolls, rolls of money in brown paper wrappers." Cook reached into the car to remove this sweater and money. In doing so, he observed a chrome-plated pistol on the right front floorboard which was removed by another officer. Yet another officer spotted a pistol on the right rear floorboard of the car and removed it. These weapons were in plain view of the officers from outside the vehicle and no search was necessary or undertaken.

The five occupants of the car were placed in police vehicles and taken to the Sumter County jail. There a man's wrist-watch, identified as having been taken from the night clerk at the motel, was recovered from Peoples.

The defendants urge that they were arrested at the moment they were ordered out of the car by armed officers and argue strenuously that *at that moment* the officers had no probable cause for taking them into custody. Hence, they conclude that the seizure of the weapons and money from the car, and the admission of these exhibits into evidence, violated their Fourth Amendment rights.

This loses sight of the fact that there is no need to justify a search of the car as incident to a lawful arrest, for no search took place. The only evidence on the point at the hearing conducted on defendants' motion to suppress was that two pistols and the money were in plain view of the officers when they approached the automobile and looked inside, and that one defendant got out of the car with the third pistol in his hand. It is well settled that seizure of the exhibits under these circumstances was not proscribed by the Constitution. *State v. Daniels,* 252 S. C. 591, 167 S. E. (2d) 621 (1969).

After driving at a speed in excess of one hundred miles per hour in pursuit of the car whose taillights he had spotted, inferentially for more than six miles before overtaking it, Deputy Nesbitt had reasonable cause to believe that its occupants were attempting to elude him and to forcibly stop them for further investigation.[1] That the car was actually stopped by other officers coming to Nesbitt's assistance is entirely without legal significance because they had the right to rely upon his knowledge in coming to his aid. *Whiteley v. Warden,* 401 U. S. 560, 568, 91 S. Ct. 1031, 28 L. Ed. (2d) 306 (1971). Having the right to stop the car and interrogate its occupants, the officers were authorized to take reasonable measures for their

[1] We do not understand the defendants to contend otherwise.

own protection. *Terry v. Ohio,* 392 U. S. 1, 88 S. Ct. 1868, 20 L. Ed. (2d) 889 (1968) ; *Adams v. Williams,* 407 U. S. 143, 92 S. Ct. 1921, 32 L. Ed. (2d) 612 (1972). Under the circumstances of this case, we find nothing unreasonable about the measures adopted, *i. e.,* converging upon the automobile with weapons drawn, ordering the occupants to come out with hands raised and frisking them for weapons.

Upon discovering the three pistols and money, including rolls of coins, which was accomplished without a search, the officers had abundant cause to arrest the defendants. Argument that the arrest took place prior to discovery is meaningless because there is no suggestion that the defendants would have been retained in custody absent these *indicia* of criminality. We find no violation of defendants' rights in the respect claimed.

In overruling defendants' motion for a mistrial when it appeared that several members of the jury had read a newspaper article concerning the trial, the judge made a statement in the presence of the jury which was susceptible of the interpretation that the judge agreed with statements of fact contained in the article. Thereupon, this comment was made the ground of a similar motion. The judge overruled the motion, but admonished the jury in the strongest terms as to its duty to decide the facts from the evidence without being influenced either by the article or by any comment upon it by the court. We are satisfied that any error was effectively cured and that no prejudice resulted to the defendants.

The defendants, challenging the sufficiency of the evidence to convict them of either conspiracy or robbery, charge that the court erred in failing to grant their motion for a directed verdict. While there is no direct evidence of the guilt of the appellants, there was circumstantial evidence plainly sufficient to raise a jury issue as to each count.

The five original defendants left Columbia together in Jackson's automobile and were in the automobile when the

robbery was planned. Peoples and Fludd were let out near the scene of the robbery within minutes of its perpetration, inferably at about 12:30 A. M. There is testimony that the arrest took place at 12:55 at a point thirty-six miles from Sumter and twenty-eight miles from the motel.[2] The same five men who occupied the automobile shortly before the robbery were together again. The three appellants were on the front seat, and one pistol was in view on the front floor-board. Two other pistols which had been used in the robbery and the stolen money were also in the car.

The testimony of Peoples and Jackson, which was calculated to exculpate the appellants, was in many respects implausible, and the jury was not bound to believe it. The circumstances warranted the jury's conclusion, implicit in the verdict, that appellants were parties to the conspiracy, and that they aided and abetted by standing by to facilitate the escape of those committing the robbery.

Finally, the defendants contend that the verdicts of the jury convicting them of both offences were contrary to the instructions, which the defendants construe as directing the jury that the defendants could be convicted of either offence but not both. Such an instruction would have been contrary to the express ruling of the court on this point before delivery of the charge, and we disagree with defendants' interpretation of it in this respect. The case was submitted to the jury on two indictments, one charging conspiracy and the other armed robbery, and the jury was told to write a verdict on each indictment, which could be either guilty or not guilty as to any or all of the defendants.

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and LITTLEJOHN, JJ., concur.

---

[2] This is consistent with Nesbitt's testimony as to the speed at which he drove in overtaking the car and wholly inconsistent with Peoples' testimony that he and Fludd waited twenty minutes after the robbery before locating the car parked at the Zippy-Mart.