**Charles Tazz SHERMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 47084.**

Court of Criminal Appeals of Texas.

Nov. 28, 1973.

Joe Cisneros, McAllen, for appellant.

Oscar McInnis, Dist. Atty., and Walter G. Weaver, Asst. Dist. Atty., Edinburg, Jim D. Vollers, State's Atty., Buddy Stevens, Asst. State's Atty., Austin, for the State.

OPINION

CHADICK, Commissioner.

Charles Tazz Sherman was found guilty of the offense of robbery by assault. His punishment was assessed at twelve years' confinement in the penitentiary by the jury.

On August 5, 1972, shortly after the bar closed in the Holiday Inn at McAllen, the appellant approached Jean Hull, the night auditor and clerk, asked about accommodations, and whether or not a Banco-Americard credit card would be honored. Mrs. Hull answered that the credit card was not acceptable and suggested that Sherman go to the nearby Ramada Inn. Sherman departed. Later that night, at approximately 3:00 o'clock A.M., Sherman returned and again approached Mrs. Hull and asked if she would accept the Banco-Americard credit card. She again declined. After more discussion, Sherman said, "Well, I don't guess there is anything you can do for me, is there?" Mrs. Hull assured him there was nothing and turned her attention to the audit work she was engaged in. She looked up from her desk and Sherman said, "Yes, there is one thing you can do for me," and saw him place his hand under the front left side of his shirt. As he did so he turned toward her, with the demand, "Give me all the money in the cash drawer." She complied with the demand, handing over all visible money in the cash drawer.

After Mrs. Hull surrendered the money Sherman remained in the lobby of the Inn and engaged Mrs. Hull in conversation. He permitted her to make wakeup calls, accepted a cup of coffee and had her bring him cigarettes from a cigarette vending machine situated some thirty feet from the clerk's desk. His escape was discussed and Mrs. Hull offered to call a cab for that purpose. He consented to a call for a cab. She called a friend and fellow employee, Sallie Farr, under the pretense of a cab call. After receiving Mrs. Hull's call, Mrs. Farr called the police dispatcher and told

him she thought Mrs. Hull was in trouble. The dispatcher radioed Sgt. Ramirez and patrolman Garza to proceed to the Holiday Inn to investigate.

When Ramirez and Garza entered the Inn lobby, Sherman was leaning on the clerk's desk with his right hand under the front of his shirt and turned in surprise and stared at the officers. As patrolman Garza approached the desk area, the officer testified with reference to Mrs. Hull and Sherman, " * * * I was going to check with her to see what the trouble was, but before I got close to the desk, she kind of made a sign at me that the man had a gun with him, so, instead of coming to the desk I just walked on and grabbed his hands and officer Ramirez came around and got him from the back." In describing Sherman's action, the policeman testified, " * * * When I walked in he saw me and he stood up straight and he kept staring at me. While I saw him, then I looked at the desk clerk and this was when she made the sign at me and I just walked straight at him and grabbed his hands and officer Ramirez came around the back and he took the screwdriver out." In just under an hour and a half after Sherman's second appearance at the Inn, these police officers, acting without an arrest or search warrant, arrested Sherman and seized a screwdriver concealed under his shirt.

■ Appellant's first ground of error is as follows, to-wit:

"The trial court erred in overruling appellant's motion to suppress any and all physical demonstrative evidence obtained or seized from the person of appellant at the time of his arrest and/or thereafter to the time of trial."

It is argued under the point that the policeman had no probable cause to arrest and search Sherman and seize the screwdriver. Such action, it is contended, violated Sherman's rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution; and under

Texas Constitution, Article 1, Sections 9, 10 and 19, Vernon's Ann.St.; and Articles 14.01, 14.02, 14.03, 14.04 and 14.05, Vernon's Ann.C.C.P. To support appellant's position the following cases are cited: Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142; Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306; Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688; Murphy v. State, 378 S.W.2d 73 (Tex.Cr.App.1964); Gonzales v. State, 95 S.W.2d 972 (Tex.Cr.App.1936).

Arrest without warrant is authorized by statute in Texas, when an offense is committed in the officer's presence, or within his view, if it is classified as a felony or as an offense against public peace. Article 14.01, V.A.C.C.P. Article 14.04, V.A.C.C.P., also provides for an arrest without warrant where it is shown by satisfactory proof to a peace officer (upon the representation of a credible person) that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant. The test of probable cause for arrest, as set out in Beck v. Ohio, supra, is, "Whether at that moment the officer's knowledge of which he had reasonably trustworthy information, was sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense."

The police had no information or knowledge before they entered the lobby that Sherman was engaged in an unlawful enterprise. At entry, however, they observed Sherman leaning on the clerk's desk with his hand under his shirt, and saw him turn to stare in surprise at them. Mrs. Hull at his back gave a signal, which the officers understood, that he had a gun, and as the officers closed in, Mrs. Hull blurted out that Sherman had her money. The commission of the several elements of the offense charged had occurred and were occurring when the police entered the lobby. The original assault and putting Mrs. Hull in fear of life and bodily injury had not

run their course nor ceased. Sherman's unlawful activity, or a part thereof that produced the offense, was still in progress. Under Beck, as well as Article 14.01, supra, the police were authorized to make an arrest. Commission of the offense in the presence of the officers constituted probable cause. The search that followed and seizure of the screwdriver were valid under Beck, as well as Article 14.01. Appellant's first ground is overruled.

■ Appellant's second ground of error requires a review of the validity of the admission into evidence of a screwdriver purportedly taken from Sherman, because the instrument was not identified as being the same screwdriver that was taken at the time of arrest. Examination of the statement of facts shows evidence that Sgt. Ramirez took the instrument from Sherman at the time of arrest, and this officer testified that within a few moments he handed it to detective Jackson, who appeared at the scene. In turn, Jackson testified he put an identity label on the screwdriver and stored it at police headquarters. A screwdriver with Jackson's label on it was identified by Jackson as the one he received from Sgt. Ramirez. Identity of the screwdriver could be inferred from the testimony. Any lack of positiveness in the identification goes to the weight and not to the admissibility of the instrument. 2 McCormick and Ray, Texas Law of Evidence, Section 1458. The second ground is overruled.

■ Insufficiency of evidence to prove the commission of the offense charged was raised by the third ground of error. The proof offered by the State has been carefully examined. There is probative evidence to support each element of the offense. This opinion will not be extended to summarize all evidence, as its general nature has previously been indicated. The third ground is overruled.

The fourth, fifth and sixth grounds of error have been studied with care and

nothing found requiring reversal of the judgment. Such grounds are overruled.

The judgment of the trial court is affirmed.

Opinion approved by the Court.