540 So.2d 211 (1989)
Michael C. LONDON, Appellant,
v.
STATE of Florida, Appellee.
No. 87-00549.
District Court of Appeal of Florida, Second District.
March 22, 1989.
James Marion Moorman, Public Defender, and A. Anne Owens, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Davis G. Anderson, Jr., Asst. Atty. Gen., Tampa, for appellee.
*212 PARKER, Judge.
London appeals the judgment and sentences for seven counts of armed robbery and one count of attempted armed robbery. London entered pleas of no contest to all charges after the trial court denied his motion to suppress evidence seized from his person and from the vehicle he was operating at the time of his arrest, any testimony of fingerprint comparison or identification, and any statements made by London following his arrest. London reserved his right to appeal the trial court's ruling on the motion to suppress, which the court found to be dispositive of the case. Because we disagree with the trial court's denial of London's motion, we reverse his convictions and sentences.
Officer Kachadurian, a Lakeland police officer, testified that on August 4, 1986, at approximately 12:33 a.m., he received information over the radio that a robbery had just occurred at a sandwich shop in Lakeland. Kachadurian was dispatched to the scene to backup Officer Brooks. When he heard the dispatch, Kachadurian was about three-quarters of a mile and approximately two minutes from the location of the crime. The only description given of the robbery suspect was "a black male, armed with a handgun, wearing a mask." The radio message did not mention a vehicle or the direction of the robber's flight.
While enroute to the scene of the robbery, Kachadurian observed a "white vehicle, mid-70's model Oldsmobile Cutlass," approaching him on a street which leads from the robbery location, about three-quarters of a mile from the robbery. Kachadurian described the vehicle, which was traveling in a direction away from the crime scene, as occupied by two black males, rather clean, with a bluish-green interior, decorator incense hanging from the rear view mirror, whitewall tires, and a rally-type factory wheel. The vehicle was traveling at a normal rate of speed. At the time Kachadurian observed the white vehicle, six minutes had elapsed since the robbery. Kachadurian testified that he saw no traffic other than the white car while en route to the robbery scene. Kachadurian did not stop the car but proceeded to the scene. Meanwhile, Officer Brooks reported that he was pursuing a suspect vehicle.
Shortly after passing the white Oldsmobile, Kachadurian stopped to talk to an unidentified white male who was walking his dogs several blocks from the robbery scene. The man informed Kachadurian that he saw a white vehicle parked across the street from the sandwich shop and later observed the same vehicle pull out and head west at a high rate of speed. Kachadurian was convinced that the vehicle described by the unidentified citizen was the same vehicle that he had observed moments before, and he suspected that it had been involved in the robbery. He immediately issued a BOLO over his police radio to be on the look out for an "older white vehicle, possibly an Oldsmobile," with two black male occupants, traveling westbound from the scene "at a high rate of speed." Kachadurian then proceeded to the crime scene and had no further involvement with the suspects' apprehension.
Officer Garrison also of the Lakeland Police Department testified that she was on routine patrol when she received information about the robbery over the radio. She then heard Kachadurian's BOLO. Shortly thereafter, she observed a white Oldsmobile Cutlass driving north. The vehicle matched Kachadurian's description and was the only car on the road at the time. Garrison testified that she made eye contact with the driver of the car, who then quickly averted his eyes and resumed driving. She thought this to be suspicious, turned around, and followed the car. She also remembered that she had previously been briefed to look out for an "older white car" that had been involved in various robberies around town.
Garrison, with the assistance of other officers, stopped the vehicle solely based upon a suspicion by virtue of the BOLO that the occupants had committed the robbery. Garrison observed no traffic infractions before stopping the vehicle. Both London, the driver, and his accomplice James Williams, who was a passenger in *213 the car, were removed at gun point, handcuffed, and placed in patrol cars. Once at the police station, London and Williams were fingerprinted, photographed, and interviewed. Both confessed to various robberies in the Lakeland area, including the sandwich shop.
Ordinarily, we would commence our analysis by determining whether the initial stop of the vehicle by the officers was proper. All that is required for a vehicle stop, such as transpired in this case, to be valid is a founded suspicion on the part of the officer effectuating the stop that the occupants have committed or are about to commit a crime. Sumlin v. State, 433 So.2d 1303 (Fla. 2d DCA 1983). Because we nonetheless reverse the order denying the motion to suppress on other grounds set out below, we need not decide the validity of the stop.
At the outset, we conclude that London was effectively under arrest when he was handcuffed, held at gun point, and placed in the patrol car. See Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Although he had not formally been informed that he was under arrest, it was evident at that point that he was not free to leave, but was being restrained against his will. Id. Probable cause was necessary for London's arrest to be proper. See D'Agostino v. State, 310 So.2d 12 (Fla. 1975), in which the supreme court observed:
The probable cause required for a warrantless arrest has been compared to a magistrate's assessment of "probable cause" for a search or arrest warrant to issue. Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971) rejected application of any lesser standard by a court reviewing a police assessment at the scene of probable cause for such a warrantless arrest as here. Whiteley also involved an arrest by an officer acting on a BOLO and reiterated the necessity of facts in the officer's possession to support the probable cause necessary for making the arrest and then the search. See Collins v. State [65 So.2d 61 (Fla. 1953)], supra.

It is settled that in order to make a valid arrest probable cause must exist prior thereto. Moreover, a BOLO alert does not in and of itself constitute adequate probable cause for an arrest, absent some supporting factual data in the possession of the arresting officer prior to making the arrest, which would support a finding of probable cause. See Whiteley v. Warden, supra. Clearly the information in the BOLO did not contain sufficient and actual data as the basis for probable cause for making an arrest or search. The arresting officer must be possessed of information prior to the arrest which would constitute the required probable cause to justify the arrest being made.
D'Agostino, 310 So.2d at 15 (footnotes omitted). See also Smith v. State, 389 So.2d 654 (Fla. 2d DCA 1980).
At the time of London's arrest, the only information available to Garrison was the BOLO. Although the BOLO may have been sufficient to create a founded suspicion to justify the stop, which we do not decide, it fell short of establishing the requisite probable cause for arrest. Here, the description of the suspects and the vehicle was quite general and was obtained by an unidentified source, without there being any evidence showing the source to be reliable. See Smith. This court has held in previous cases that a vague description will not justify law enforcement in stopping, much less arresting, every individual or vehicle which might possibly meet that description. Sumlin, 433 So.2d at 1303; State v. Hetland, 366 So.2d 831 (Fla. 2d DCA 1979), approved, 387 So.2d 963 (Fla. 1980). Nor was the BOLO information buttressed by any supporting factual data. There was no identifying evidence linking the suspects to the robbery, and the vehicle's occupants were not observed by the officers committing any crime or traffic infraction.[*] Nevertheless, both were immediately *214 removed from the vehicle, handcuffed, and detained for questioning at the police department.
As in D'Agostino, the officers in this case did not have an adequate factual basis at the point of arrest to give rise to probable cause that London committed the robbery. No impartial magistrate could have issued a warrant solely on the basis of the BOLO information issued by Kachadurian and acted upon by Garrison; as such, the arrest and seizure of London was illegal. Having determined that there was no probable cause to arrest London, all the evidence seized and identifications and confessions obtained would be inadmissible as fruits of the poisonous tree. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
We reverse the denial of London's motion to suppress and consistent with that ruling, direct the trial court to vacate London's judgment and sentences.
Reversed and remanded with directions.
SCHOONOVER, A.C.J., and ALTENBERND, J., concur.
NOTES
[*] Although one detective testified at the motion hearing that one of the officers who stopped the vehicle removed a firearm from the vehicle, the record before this court does not establish the circumstances of the firearm seizure, nor whether that seizure in any way linked the two men to the robbery so as to establish probable cause for the arrest.