UNITED STATES of America, Plaintiff,

v.

McKinley L. BOARD, Defendant.

Crim. No. 90–0241.

United States District Court, District of Columbia.

Aug. 1, 1990.

Clendon Lee, Asst. U.S. Atty., Washington, D.C., for plaintiff.

Bernard S. Grimm, Washington, D.C., for defendant.

MEMORANDUM

JUNE L. GREEN, District Judge.

This matter is before the Court on Defendant McKinley L. Board's Motion to Suppress Physical Evidence. Sergeant James Dodrill and Officer Gail Haywood, of the Metropolitan Police Department, testified on behalf of the government at the suppression hearing. Erskill Moore, Michael Green and Andre Derrington, acquaintances of McKinley Board, testified

on behalf of the defendant. For the reasons stated below, the Court grants defendant Board's motion to suppress physical evidence.

## I. Facts

Officers Gail Haywood and James Effler, of the Fifth District Metropolitan Police Department, were patrolling the areas of 3rd and T Streets, N.E. during the early morning hours of April 7, 1990. Driving on T Street, the officers observed the defendant and two other individuals seated in a vehicle parked on 3rd Street, near the intersection. According to Officer Haywood's testimony, the defendant, who appeared to be the driver of the vehicle, matched the description of a suspect known by Officer Effler to be wanted by the Montgomery County Sheriff's Department.[1] On the previous day, Officer Effler had participated in an attempted turn up of the suspect at an apartment building across the street from where the defendant was parked.

On that day, the police department had received a tip that the suspect could be found in either apartment 25 or 31 at 1835 3rd Street, N.E. A radio run was broadcast which described the suspect as a black male, 5' 11", 165 lbs, with brown eyes and dark hair. The radio run also gave the suspect's name and date of birth, indicating that he was a minor. The radio run mentioned nothing about an automobile. Several Metropolitan Police Officers, including Sergeant Dodrill, who testified at the suppression hearing as to the contents of the radio run, responded to the address and questioned the occupants of each apartment, but the suspect was not located.[2]

Officers Haywood and Effler turned on their emergency lights and pulled their police cruiser alongside the defendant's vehicle. The officers had the defendant get out of the vehicle and they frisked him. The frisk revealed that the defendant was wearing a bullet proof vest.

Witnesses for the defense, Erskill Moore, Michael Green and Andre Derrington, each testified that Officer Effler next asked for permission to search the defendant's automobile. The witnesses testified that McKinley Board denied permission for the search, but that Officer Effler stated an intent to search the car in any event.

At some point, Officers Haywood and Effler called for assistance. Sergeant James Dodrill and his partner responded to the call. Sergeant Dodrill testified that when he arrived upon the scene he asked for the defendant's permission to search his automobile. According to the Sergeant, the defendant replied "Yeah, sure! Go ahead!" The Sergeant testified that he asked the defendant a second time and that the defendant again agreed to allow the officers to search the vehicle. Officer Effler then opened the door to the driver's seat. On the floor board of the car, the officers saw a semi-automatic pistol wrapped in a rag so that only the trigger and handle were uncovered. The defendant was then placed under arrest. A further search of the vehicle revealed quantities of crack stashed in the glove compartment and the seat console.

## II. Discussion

The fourth amendment protects against unreasonable searches and seizures of persons and their belongings. There is no question in this case, that the defendant was seized when officers stopped him and his companions as they sat in their automobile parked at the intersection of 3rd and T Streets. Officer Haywood testified that she had turned on the emergency lights of her police cruiser before pulling up to the

---

1. Officer Haywood testified mistakenly that the suspect was wanted in PG County, meaning Price Georges County. The warrant apparently was issued from Montgomery County.

2. Officer Dodrill testified at the suppression hearing that he obtained information from the occupants of 1835 3rd Street, N.E., that the suspect might have been wearing a red jacket and red cap. The government contends in its papers opposing the suppression motion that the defendant was wearing a red jacket and cap at the time of his arrest. However, no evidence of this fact was produced at the hearing. Nor was there any evidence that the officers who stopped the defendant initially were privy to this information. Therefore, the Court expresses no opinion on whether this information would have provided the specificity needed to establish a reasonable suspicion.

defendant's vehicle. She also testified that the defendant was asked to get out of his car and that he was not free to leave. The question this Court must decide, however, is whether the seizure and the subsequent search of the defendant's vehicle were unjustified, and thus, violated the fourth amendment.

It is well-settled that even absent probable cause to arrest, a police officer may stop briefly and frisk for weapons persons whom they reasonably believe to be engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Moreover, the Supreme Court has held that in some circumstances, a *Terry* stop may be made "if police have reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony." *United States v. Hensley*, 469 U.S. 221, 229, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985). In *Hensley*, the Court upheld the detention of the defendant by officers of one police department who relied on another police department's flyer describing the defendant and indicating that he was wanted for investigation of a felony. The Court concluded that if the police department which issued the flyer possessed a reasonable suspicion justifying a *Terry* stop, then officers in another department could rely on the flyer in stopping the suspect, as long as the stop was not significantly intrusive. *Id.* at 233, 105 S.Ct. at 682; *See also Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971) (holding that the sheriff who broadcast a radio bulletin describing the suspect and his car and indicating a warrant had been issued lacked probable cause for the warrant, therefore, the detention of the defendant by other officers violated his constitutional rights).

However, this case differs significantly from *Hensley*. First, the warrant which was issued against the suspect in this case was based on a custody order for a juvenile, and not on a felony as in *Hensley*. The Court in *Hensley*, 469 U.S. at 229, 105 S.Ct. at 680, specifically refused to decide the question of whether *Terry* stops would be permitted to investigate crimes of a less serious nature.

Second, the arresting officers in *Hensley* apparently were acquainted with the defendant and he was known to be the subject of the warrant. *Id.* at 223, 105 S.Ct. at 677. In contrast, the officers who stopped McKinley Board did so based on a very general description which would fit innumerable black males in this city. The Court finds that the officers could not have reasonably suspected the defendant of criminal activity based on such a general description. Nor does the fact that the defendant was parked across the street from the apartment building where the turn up for the wanted juvenile had been conducted the day before, provide grounds for reasonable suspicion that the defendant was the suspect the officers were looking for. The radio run placed the suspect inside the apartment building. Moreover, the radio run offered no description of the defendant's car whatsoever. The mere fact that the defendant was stopped on the same street is insufficient for reasonable suspicion.

While the Court is distressed that a suspected drug dealer who carefully equips himself for violence may go free, it is bound to uphold the constitutional rights of all citizens subject to its authority. To hold otherwise would mean that any individual who fits the most general of descriptions and who happened to be in an area where a suspected wrongdoer might be located could be stopped and searched by law enforcement officers. Such an expansive power would lead inevitably to the erosion of our citizens' rights to privacy.

Thus, the Court concludes that the officers who stopped McKinley Board lacked reasonable suspicion that the defendant was engaged in or had engaged in criminal activity. The seizure of the defendant therefore violated his fourth amendment rights and taints the defendant's alleged consent to search his automobile. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Only "an intervening independent act of free will" . . . "purge[s] the primary taint of the

unlawful invasion." *Id.* at 486, 83 S.Ct. at 416. The Court finds no intervening act present in this case. Consequently, the evidence which was obtained as a result of this search must be suppressed.