OPINION
{¶ 1} Marwan Snodgrass appeals from his conviction of possession of crack cocaine. In a single assignment, Snodgrass argues that the trial court erred in overruling his pre-trial motion to suppress the cocaine recovered by police from his person. The State did not respond with an appellate brief.
 {¶ 2} The testimony given at the suppression hearing was quite brief. Officer Jerome Montico of the Springfield Police Department testified he was on duty in a patrol car on July 19, 2003 when he received a call from Patrol Sergeant Peabody, who was the supervisor of the undercover patrol, that he needed a uniform car to come and assist him in the area of Lowry and High. He told Montico that Officer Buffington was working undercover posing as a prostitute in that area and Peabody said there was a black male around her that he said he overheard what he thought was a vague threat to her. Montico said he drove immediately to the area and saw Snodgrass and Officer Buffington sitting on the curb at the intersection. He said he got out of his cruiser and told Snodgrass to come to him and he immediately recognized Snodgrass from prior dealings with him. Montico said he knew Snodgrass had resisted officers in the past and he "had been implicated in carrying a good firearm from time to time." (Tr. 7). Montico said he had even taken a call near Snodgrass' residence in which someone said he shot up their car.
 {¶ 3} Montico said he patted Snodgrass down for weapons and during the pat-down he felt a lump in Snodgrass' watch pocket that he believed was crack cocaine based on prior experience. Montico said he removed the item and discovered it was crack cocaine and arrested Snodgrass. (Tr. 10).
 {¶ 4} Snodgrass argues that the trial court erred in denying his suppression motion because Montico did not have articulable suspicion to believe he was engaged in any criminal activity and no reason to frisk him because there was no evidence he might be armed and dangerous.
 {¶ 5} Snodgrass notes that Officer Montico justified his stopping him because of "vague threats" heard by Officer Peabody which were conveyed by Peabody to Montico. Snodgrass argues that Peabody, who did not testify at the suppression hearing, stated at the trial he could not hear the conversation between him and the undercover police officer. Also he notes Officer Montico made no mention at trial of overhearing "a vague threat" but that Peabody had simply requested he come and "investigate what the black male's intentions were."
 {¶ 6} Snodgrass agrees that an officer making an investigative stop may rely on information given him in a police dispatch but the State must demonstrate at the suppression hearing the facts precipitating the dispatch justified a reasonable suspicion of criminal activity. Maumeev. Weismer (1999), 87 Ohio St.3d 295.
 {¶ 7} Justice Cook wrote on behalf of the Court in Maumee at pages 297 and 298 of the Court's opinion:
 {¶ 8} "A police officer need not always have knowledge of the specific facts justifying a stop and may rely, therefore, upon a police dispatch or flyer. United State v. Hensley (1985), 469 U.S. 221, 231, 105 S.Ct. 675,681, 83 L.Ed.2d 604, 613. This principle is rooted in the notion that `effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information.' Id. At 231, 105 S.Ct. at 682, 83 L.Ed.2d at 614, quoting United States v. Robinson (C.A.9, 1976), 536 F.2d 1298, 1299. When a dispatch is involved, therefore, the stopping officer will typically have very little knowledge of the facts that prompted his fellow officer to issue the dispatch. The United States Supreme Court has reasoned, then, that the admissibility of the evidence uncovered during such a stop does not rest upon whether the officers relying upon adispatch or flyer `were themselves aware of the specific facts which led their colleagues to seek their assistance.' It turns instead upon `whether the officers who issued the flyer' or dispatch possessed reasonable suspicion to make the stop. (Emphasis sic.) Id. at 231, 105 S.Ct. At 681, 83 L.Ed.2d at 613 (discussing and applying Whiteley v.Warden, Wyoming State Penitentiary [1971], 401 U.S. 560, 91 S.Ct. 1031,28 L.Ed.2d 306, to reasonable suspicion in the context of a police flyer). Thus, `[i]f the flyer has been issued in the absence of a reasonable suspicion, then a stop in the objective reliance upon it violates the Fourth Amendment.' Hensley, 469 U.S. at 232, 105 S.Ct. At 682, 83 L.Ed.2d at 614.
 {¶ 9} "Many courts in Ohio and other jurisdictions have interpretedHensley and Whiteley to require proof at the suppression hearing that the officers issuing the dispatch possessed sufficient knowledge of facts or information to justify the stop, where the stopping officer himself did not. See State v. Hill, supra; State v. Ramsey (Sept. 20, 1990), Franklin App. Nos. 89AP-1298 and 89AP-1299, unreported, 1990 WL 135867. Other Ohio courts have held instead that an officer's statement that he relied upon a dispatch is, by itself, sufficient to justify the stop, regardless of the knowledge of the officer issuing the dispatch. See, e.g., State v.Good (1987), 37 Ohio App.3d 174, 525 N.E.2d 527; State v. Janda (Apr. 14, 1993), Lorain App. No. 92CA005416, unreported, 1993 WL 120549. See, also, State v. Penn (Aug. 2, 1994), Franklin App. No. 93AP-953, unreported, 1994 WL 409758.
 {¶ 10} "We believe the latter approach is inconsistent with United States Supreme Court precedent and fails to adequately protect the citizen's Fourth Amendment rights. Accordingly, we clarify here that where an officer making an investigative stop relies solely upon adispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity.
 {¶ 11} "Given that the state must present evidence of the facts known to the dispatcher in these situations, the next question concerns the type of evidence that may be used for this purpose. The appellate court below concluded that the city's failure to offer the testimony of either the dispatcher or the citizen informant rendered its evidence insufficient. In this assessment of the sufficiency of the evidence, however, the court, without explanation, ignored Roberts's testimony about the facts relayed from the caller to the dispatcher. While a stopping officer in a dispatch situation will typically be unaware of the facts known to the dispatcher, this case is different. Here, Robertstestified that the dispatcher relayed to him the facts precipitating thedispatch.
 {¶ 12} "We believe that the appellate court should have considered Roberts's testimony in assessing whether the facts known to the dispatcher were sufficient to justify the stop. First, we note that the hearsay rule does not preclude courts' consideration of this evidence, because `[a]t a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial.' United States v. Raddatz (1980), 447 U.S. 667, 679, 100 S.Ct." (Emphasis added). {¶ 13} In this matter, Officer Montico did not receive a police dispatch but instead he spoke directly to Officer Peabody who was supervising an undercover patrol who said he overheard vague threats by the black male to Officer Buffington. When Montico arrived at the scene he saw a black male he recognized as the defendant sitting next to Officer Buffington. Having known that Snodgrass had resisted police officers in the past and had been known to carry a firearm, it was reasonable for him to frisk the defendant for a weapon. The resultant discovery of the cocaine was based on probable cause and was thus admissible. The appellant asks us to consider Officer Peabody's trial testimony but that testimony was not considered by the trial court in overruling the suppression motion. The appellant's single assignment of error is overruled. The judgment of the trial court is Affirmed.
Wolff J., and Grady, J., concur.