UNITED STATES of America,
Plaintiff-Appellant.

v.

James William WELLS, Defendant-
Appellee.

No. 72–1062.

United States Court of Appeals,
Sixth Circuit.

Sept. 28, 1972.

Joe B. Brown, Asst. U. S. Atty., for plaintiff-appellant; Charles H. Anderson, U. S. Atty., Fred D. Thompson, Asst. U. S. Atty., Nashville, Tenn., on brief.

Jerry C. Colley, Columbia, Tenn., for defendant-appellee; MacFarland, Colley, Blank & Jack, Columbia, Tenn., on brief.

Before PHILLIPS, Chief Judge, and EDWARDS and KENT, Circuit Judges.

EDWARDS, Circuit Judge.

This is a government appeal from a District Judge's suppression of 50 gallons of illicit whiskey which was seized from defendant Wells. Wells had been charged with possessing nontax-paid whiskey, in violation of 26 U.S.C. § 5205(a)(2) (1970).

The District Judge held that there was no probable cause for the arresting officers to stop and search Wells' automobile at the time and place in question and ordered the evidence suppressed.

The record of the hearing on the motion to suppress shows the following facts:

A team of Alcohol Tax Unit officers were engaged in a pre-dawn surveil-

lance. One such officer was hidden 150 yards from the house of Les Warren in rural Hickman County, Tennessee. By binoculars he observed some men load 10 plastic containers in a car, nine in the trunk and one in the back seat. This occurred at about 4:55 a. m. The containers were "5 gallon cans, plastic cans, and they appeared to be heavy, and I thought they were liquor." Ingram, the officer on the stakeout, then radioed Batts, one of the officers in a car a mile and a half away, and told him "that the car was loaded and headed in their direction." Batts testified that Ingram added they "ought to check him or look at him." When Batts was asked, "where did they say the car proceeded?" he answered, "Car proceeded from Mr. Warren's residence up the hill to the Willow Springs Road and turned left." Willow Springs Road runs into Primm Springs Road, where Batts and his companion were posted in their car.

Defendant's car actually turned towards them on Primm Springs Road, although it could have turned in the opposite direction. Officer Batts and his companion, Officer Moore, met it, turned around, followed it, and ultimately stopped it. Before that occurred, Batts testified as to additional facts: "I noticed that the rear of the car was sitting down. I noticed that the tires were somewhat ballooned, and I also noticed that the driver was having some difficulty holding this car on curves as he went around curves." Asked what about the speed of the car, he answered, "He had increased his speed." Batts then stopped the car, identified himself as a federal officer, opened the door and saw a five gallon container in the back seat of the car and smelled whiskey. At that point they also opened the trunk and found a total of 50 gallons of nontax-paid whiskey.

The District Judge asked Batts whether this was "the total extent of the information you had?" Batts replied, "We stopped him as a result of the radio message and because the way the car looked after we followed him."

There are two gaps in the chain of proof of probable cause which gave the District Judge (and give us) real concern.

The first is that the radio message to the arresting officers did not specifically identify what had been placed in the car.

The second is that the radio message gave no description of the car which officer Ingram wanted stopped.

We approach decision of this case with two standards of constitutional interpretation in mind. The first is "[T]he recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract." United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

The second standard this court sets forth as follows:

Historically, however, it is clear that a different standard has been applied to the facts authorizing search of a vehicle without a warrant than to those held to authorize search of a dwelling. Carroll v. United States, supra; Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925); Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629 (1931).

\* \* \* \* \* \*

The general rule pertaining to search of automobiles or other vehicles is as follows:

"On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile *or other vehicle* contains that which by law is subject to seizure and destruction, the search and seizure are valid. \* \* \*" (Emphasis added)

Carroll v. United States, 267 U.S. 132, 149, 45 S.Ct. 280, 284, 69 L.Ed. 543 (1925).

United States v. Baxter, 361 F.2d 116, 119 (6th Cir. 1966).

Similar language from the *Carroll* case has recently been quoted and relied upon by the Supreme Court. Chambers v. Maroney, 399 U.S. 42, 48–49, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

The officers who made the arrest in this case were members of the Alcohol, Tobacco and Firearms Division of the United States Treasury Department. They were engaged in a nighttime surveillance of a particular residence—the residence of Les Warren. One officer was on foot, hidden in woods near Warren's house, watching by binoculars. The other two were stationed in a car on a near-by paved road. They were linked by radio communication equipment.

 Where the officers involved are on a joint law enforcement mission and the surveilling officer has personal knowledge which (as here) constitutes probable cause to believe that illicit whiskey is being transported by automobile, the message he sends his companions should be interpreted with these relevant background facts taken into account. A predawn radio transmission from one Alcohol Tax Division officer to two other Alcohol Tax Division officers engaged in a rural Tennessee stakeout, "The car [is] loaded and headed in [your] direction," can appropriately be interpreted (as these receiving officers obviously interpreted it) as referring to being loaded with illicit whiskey. If officers Batts and Moore had reason to believe that the car they stopped was the one which Officer Ingram was talking about, we believe they had probable cause to search it. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L. Ed. 543 (1925).

This then brings us to the second question pertaining to a lack of description of this car. Here again, the background of these terse transmissions ("is loaded and headed in [your] direction")

becomes important. The setting is a rural area of Hickman County, Tennessee, at 4:55 a. m., before an October dawn. The receiving officers met defendant's car approaching them five minutes after they had been told it was headed in their direction. They had not seen another car all morning. When they turned to follow it, they noticed "that the rear of the car was sitting down," "that the tires were somewhat ballooned," and "that the driver was having some difficulty holding this car on curves." We believe these facts, plus the background facts of the event, amply identified the car they stopped as the one which Officer Ingram's transmission concerned.

The order suppressing evidence and the judgment founded thereon are vacated and the case is remanded to the District Court for further proceedings.