**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Harold Dean AVERITT, Defendant-
Appellant.**

No. 72–1513.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 27, 1972.

Decided May 2, 1973.

Dale Quillen, Nashville, Tenn., for defendant-appellant.

Charles H. Anderson, U. S. Atty., Nashville, Tenn., for plaintiff-appellee.

Before PECK and MILLER, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

This is an appeal from conviction of appellant of possession and transportation of unstamped distilled spirits, in violation of 26 U.S.C. § 5604(a)(1) and 18 U.S.C. § 2. The District Court had overruled defendant's motion to suppress evidence allegedly seized in violation of the Fourth Amendment of the United States Constitution, and subsequently the defendant, Harold D. Averitt, was found guilty by a jury.

The defendant raises two issues on this appeal. First, that the treasury agents who stopped and searched his pickup truck lacked probable cause to support the search; and second, that the means employed by the officers to effectuate the search and seizure were unreasonable under the particular circumstances of this case.

### 1. *Probable cause.*

On May 26, 1971, two agents of the Alcohol, Tobacco and Firearms Division of the United States Treasury Department and one agent of the Tennessee Alcoholic Beverage Commission commenced a surveillance operation on rural property of Henry B. Manners, Jr., situated in Stewart County, Tennessee. Located upon this property was a smokehouse approximately 45 feet from the house, and a barn. At 4:30 P.M. Treasury Agent Rollins positioned himself on a hillside 200 yards from the smokehouse and through the use of a 20-power spotting scope kept the Manners property under observation. The other officers concealed their automobile in a wooded area a quarter of a mile from the scene and kept in contact with Agent Rollins by radio.

At 5:30 P.M. Agent Rollins observed the owner of the property, Henry B. Manners, Jr., arrive at the farm in his pickup truck hauling a mule. After unloading the animal in the barn, Manners returned to the house and then at approximately 6:20 P.M. he came out of the house and backed his automobile up to the smokehouse. He removed from the trunk of the car 37 one gallon glass jugs marked with red Coca Cola labels and containing a clear liquid. He placed them in the smokehouse. Agent Rollins testified that one gallon glass jugs of this type are commonly used in the illicit whiskey trade.

Several hours later two men in a 1968 Chevrolet pickup truck, bearing 1971 Tennessee license plates numbered YB–7209, arrived at the Manners property, stopped at the house, and then backed the truck up to the smokehouse. Henry Manners emerged from the house with a quantity of empty paper bags, entered the smokehouse, and the three men then loaded filled paper sacks from the smokehouse into the truck. Agent Rollins testified that from his observation post he could hear the sound of jugs hitting together in the paper sacks. Throughout the period of surveillance Agent Rollins described all this activity to the other two officers over the radio and when the pickup truck departed he requested the two officers in the car to intercept the truck, which was carefully described as to make, color and license plates. Included in his radio advice to these officers was his statement, "* * * I told them, I said, *he is unloading whiskey* in this Ford." [1] At trial, an objection to the foregoing was disposed of by the District Judge as follows:

"The Court: All right, let's have what you saw. You saw they were full apparently and had liquid in them."

Whether the officer's statement that "he is unloading whiskey" was a conclusion, it was part of the advice upon which the officer conducting the surveillance and the arresting officers reasonably concluded that defendant and his companions were engaged in the illegal enterprise of transporting moonshine.[2] It is not denied that the gallon jugs which were transferred from the smokehouse into the pursued vehicle were in fact moonshine whiskey. We do not consider that this Court's decision in United States v. Wells, 467 F.2d 65, can be distinguished from the case before us.

The intercepting agents followed the truck toward Erin, Tennessee, on a narrow road. They were not in uniform and the car was devoid of any official markings or lights, but the vehicle did have a siren. When they arrived at a point wide enough to permit them to do

---

1. Agent Rollins also said, "Manners, the heavy-set dark-headed man [the latter being appellant Averitt], and man with cowboy hat begin to bring liquor out. * * * Manners and the heavy-set man [Averitt] bring the liquor and hand it up to the man with the cowboy hat up in the truck."

2. It was stipulated that resolution of defendant's motion to suppress would await the evidence adduced at the trial. The statement "he is unloading whiskey" was indeed relevant to the subject matter of such motion. The District Judge did not, as suggested by the dissent, footnote 2, strike this conclusion from the record.

so, the officers pulled abreast of the truck, sounding the siren and focusing a flashlight in the truck driver's eyes. The vehicles collided, forcing the truck off the road into a field where it finally came to rest against a mound of earth some 75 yards into the field. The officers found 50 broken jugs and 25 intact ones containing unstamped distilled spirits in the truck. The driver of the truck, the appellant, was apprehended and placed under arrest.

■ We are not here considering the sufficiency of the evidence to sustain a conviction; we consider only whether officers conducting the search and seizure and the surveilling officer had "probable cause" as required by the Fourth Amendment. The Supreme Court's decision in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L. Ed. 543, continues to be respected as a proper statement of what constitutes probable cause, justifying a warrantless search of a vehicle carrying contraband —as in this case, moonshine.

> "On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid." 267 U.S. at 149, 45 S.Ct. at 283.

While there were facts in that case as well as in the case of United States v. Wells, 467 F.2d 65 (6th Cir. 1972), which are not present here, we do not consider that such factual differences forbid our using Carroll and Wells as analogous to our decision. We believe they are controlling, and think it unnecessary to enter upon an extensive discussion of the facts in Carroll, Wells, and the case before us. We hold that there was probable cause for the warrantless search of the involved vehicle.

### 2. Misconduct of officers.

■ We find without merit appellant's contention that the conduct of the pursuing officers in stopping appellant's vehicle was such as to render the search unreasonable. Appellant and his companion were aware that they were being pursued because they were engaged in illegal conduct. We consider that the government's address to us contains a substantially correct statement of the background facts.

> "Agent Scharber testified that they followed the truck until they got to a place wide enough so that they could pull it over safely. When they did reach such a place they immediately tried to get in front of the truck, sounded the siren, and shined a flashlight in the driver's eyes. The need having been established to stop the truck, the agents used only that force necessary to stop the truck. In the absence of uniforms and a flashing light, there were no other means to stop the truck. Indeed, the agents were in the process of being forced off the road themselves by the truck at the time the truck ran off the road."

Appellant relies upon a decision of this Circuit, United States v. Costner, 153 F.2d 23, where a search was held to be illegal because the involved search and seizure was consummated by the employment of "unreasonable means." A fair reading of that decision makes clear that the condemned conduct of the officers resided in the firing of five shells of buckshot from a sawed-off shotgun at the accused vehicle. Judge Hick's opinion recites:

> "In this case, after locating and giving chase to the suspected car and while they were at no time far behind it, Inspector Rudd fired five shells of buckshot at it from a sawed-off shotgun while it was traveling up to 80 miles an hour on a public highway. It is fortunate that the car was stopped without injury to the occupants. One

of them was probably innocent of any wrongdoing, since appellee testified that he had picked up his companion, a boy named Jenkins, who was going to visit his sister near Sevierville, and since the Government dismissed the case as to Jenkins. Further, we think that prudent officers might have reasonably anticipated the presence of innocent travelers on the highway in the line of fire. Further, it may be observed that there was no real necessity for shooting the tires down in an effort to capture the car for there is no evidence that it was about to elude the officers." 153 F.2d at 26.

We think the foregoing exhibits the inapplicability of that case to the one before us. In *Costner*, the District Judge sustained the claim of unreasonableness. The District Judge in this case did not. Judge Hicks made this further observation in *Costner*.

"There is no formula for testing the reasonableness of the conduct of the searching and seizing officers. 'Each case is to be decided on its own facts and circumstances.'" 153 F.2d at 26.

We are impressed that the very great danger to "innocent travelers on the highway" brought about condemnation of the officers' conduct in *Costner*. We decline to hold that the conduct of the officers in this case warrants a holding that it rendered illegal the search that was made.

Judgment affirmed.

WILLIAM E. MILLER, Circuit Judge (dissenting).

The starting point for analyzing this case is, of course, the Fourth Amendment. The case law interpreting the Amendment establishes that law enforcement officers conducting a search or seizure must obtain a warrant unless the circumstances under which they are acting fall within one of the limited and closely guarded exceptions to this general rule. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One exception commonly referred to as the exigent circumstances rule, concerns the stopping of moving vehicles on the highway. Even when this exception is invoked and no warrant is obtained, a law enforcement officer must be acting upon knowledge amounting to probable cause that the vehicle he stops on the highway has committed or is committing an offense. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); United States v. McKenzie, 446 F.2d 949 (6th Cir. 1971). Therefore, it must be determined whether at the time the government agents halted the defendant's truck they had probable cause to believe that the defendant was transporting illicit whiskey in the vehicle.

Probable cause has been defined by the Supreme Court as "facts and circumstances within their (the officers) knowledge and of which they had reasonably trustworthy information . . . to warrant a man of reasonable caution in the belief that" an offense is being committed or has been committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925). Although this definition had its genesis in earlier cases [1] this basic statement from *Carroll* has been quoted, paraphrased or cited approvingly throughout the search and seizure cases up to the present time. *See* Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

The government asserts (and the majority apparently agrees) that the intercepting officers had a right to rely on the statement of Agent Rollins that a violation of the law was taking place and

---

1. See Brinegar v. United States, 338 U.S. 160, 176 n. 15, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

that immediate action had to be taken. This argument, however, assumes too much and avoids the crux of the issue since only if Agent Rollins had probable cause to believe a violation of the tax laws was in progress could the actions of the intercepting agents, acting upon Agent Rollins's instructions, be upheld. This same basic argument was proposed and specifically rejected in Whiteley v. Warden, 401 U.S. 560, 568, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), which settles the issue here. No effort is made by the majority to distinguish this recent Supreme Court ruling.

The only observation of Agent Rollins which even hints at illegal activity was the viewing of 37 one gallon glass jugs containing a clear liquid being unloaded into the smokehouse by Henry B. Manners, Jr., and the subsequent loading of filled paper sacks into the defendant's truck. Agent Rollins did not know what actually was in the jugs transferred from the car trunk into the smokehouse or even that the paper sacks subsequently loaded into the truck contained these same glass jugs. At best the government agent had a bare suspicion that the truck was carrying moonshine. Suspicion or even reasonable suspicion will not suffice and are not a substitute for the higher constitutional standard of probable cause. The record is barren of any evidence to indicate why surveillance of the Manners property had been

undertaken. There is no evidence that the defendant or the other men involved were known whisky runners. Nor is there evidence of any illegal distilling operation on the premises or in the area, or that the government agents were acting pursuant to an informer's tip. Therefore, I conclude that Agent Rollins did not have sufficient knowledge to satisfy the constitutional standard of probable cause and that the agents acting under his instruction were in no better position. The district court in my view erred in overruling the defendant's motion to suppress and the case should be reversed and remanded to the court below for further proceedings.[2] The majority opinion, I believe, seriously erodes the protections of the Fourth Amendment and disregards controlling precedent. Since the search was illegal, the highly questionable means employed by the officers in effectuating the search need not be reached.

Addendum to above dissenting opinion of WILLIAM E. MILLER, Circuit Judge.

After the above dissenting opinion was written and circulated, the majority opinion was revised in certain minor respects. This necessitates a few additional observations:

1. Agent Rollins' conclusory statement that "he is unloading whiskey" cannot rise to any higher level than the

---

2. My views would not undermine the authority of the opinion of this Court in United States v. Wells, 467 F.2d 65 (6th Cir., 1972), for I deem the cases to be clearly distinguishable upon their facts. First, in *Wells*, testimony of one of the investigating officers was admitted without objection that he thought that the containers which he observed "were liquor." In the present case proffered testimony somewhat to the same effect was ordered by the district judge to be stricken from the record. Second, in *Wells*, there were additional facts, not present here, tending to support the idea that the automobile was transporting illicit whiskey.

For example, Officer Batts in that case testified that he noticed that the rear of the car was "sitting down"; that the tires were "somewhat ballooned"; and that the driver was "having some difficulty holding this car on curves as he went around curves." It is well known that testimony of this kind in liquor cases has been frequently sustained by the courts as relevant facts bearing upon the question of probable cause. In brief the prosecution in *Wells*, as this Court ruled, carried its burden of proof to establish probable cause, whereas the opposite is true in the present case.

**1014**

observations upon which it was allegedly based—observations which, in my view, fall far short of showing probable cause. Rollins could not possibly have had knowledge of the contents of the jugs or the sacks. At most he could only guess. But even so this conclusory statement was in effect *stricken* from the record by the trial court when he said, in response to an objection, "All right, let's have what you saw. You saw they were full apparently and had liquid in them." This was an admonition to the witness to stick to the facts—what he actually saw—and to avoid conclusions. Hence, I feel that my statement in the dissenting opinion above that the conclusion of Rollins was stricken from the record (*see* footnote 2) was, and is, correct. No magic or formal words are required to sustain objections to testimony or to strike or exclude it from consideration.

2. As stressed in the dissent, unless Rollins had probable cause from what he observed to believe that defendant was "unloading whiskey"—which I believe he clearly did not—his conclusory statement to that effect to the other officers adds nothing to the existence of probable cause, as Whiteley v. Warden, 401 U.S. 561, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), teaches, a decision which the majority continues to ignore.

3. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), relied upon by the majority, was a prohibition case involving the stopping and search of an automobile and is factually a far cry from the case before us, although its definition of probable cause has continuing validity. As I evaluate the facts of this case the government has wholly failed to establish that the officers had a reasonably grounded belief that the law was being violated. What the government has failed to prove has been supplied by the majority opinion by its own *ipse dixit.*