870 So.2d 200 (2004)
STATE of Florida, Appellant,
v.
Michael Angelo GONZALEZ, Appellee.
No. 3D02-2887.
District Court of Appeal of Florida, Third District.
March 10, 2004.
Rehearing Denied April 7, 2004.
Charles J. Crist, Jr., Attorney General, and Frank J. Ingrassia, Assistant Attorney General, for appellant.
Law Offices of Grey & Mourin, P.A., and Juan E. Mourin, for appellee.
Before FLETCHER, RAMIREZ, and SHEPHERD, JJ.
*201 RAMIREZ, J.
The State of Florida appeals the trial court's order suppressing the statements of Michael Angelo Gonzalez and suppressing the physical evidence found in his automobile. Because we find that Gonzalez's detention was an arrest and that the police lacked probable cause to make this arrest, we find no error and thus affirm.
Gonzalez was arrested on March 15, 2001, and charged with trafficking in heroin. He subsequently filed a motion to suppress the evidence found on that day. The testimony at the suppression hearing revealed that the day before, Lucinda Dennison was arrested in Naples for possession of heroin. Dennison identified her supplier to Detective Margarita Nelson of the DEA task force in Naples as a man in Miami named "Mike" and agreed to cooperate with law enforcement to find and arrest Mike. Dennison described Mike as a short, thin Puerto Rican male in his early twenties with dark hair and dark eyes. Dennison had never worked with law enforcement before and could not provide a last name for Mike. She also told the police that she had seen Mike driving at least four different vehicles, including a black Volkswagen Beetle.
When Dennison called Mike at the police's direction, she tried unsuccessfully to get him to come to Naples. The next day, Detective Nelson asked Dennison to call Mike again and recorded the conversation. Dennison asked Mike if he could "do four" and he said yes. She left for Miami accompanied by Detective Nelson, members of the DEA task force, members of the Naples Narcotics Unit, and members of the Florida Department of Law Enforcement to purchase heroin from Mike.
Once in Miami, Dennison called Mike again. After some calls back and forth, they ultimately agreed to meet at a Wendy's restaurant. Dennison told the police that Mike had been driving a black Volkswagen Beetle with a Miami Heat license plate. She also told the police that she had seen Mike in possession of a gun.
Naples Police Department Detective Sergeant Joseph David Popka then drove Dennison to the area to wait for Mike. When Popka heard the final conversation between Dennison and Mike detailing that Dennison and Mike were going to meet at Wendy's and that Mike was driving a black Volkswagen Beetle, Popka relayed that information to the other officers. Meanwhile, Nelson drove by the Wendy's and saw a black Volkswagen with a Miami Heat license plate with a short, thin Hispanic male behind the wheel. Nelson then reported her observations to the other members of the task force.
Several officers and agents then drove to the Wendy's restaurant and observed a young, Hispanic male driving a black Volkswagen Beetle. He was ordering food through the drive-through window. The man parked at a designated parking spot in the Wendy's parking lot and began to eat the food he had ordered.
Vince Weiner, Special Agent with the Florida Department of Law Enforcement, was there, along with two vehicles containing five law enforcement officers. Weiner's special operations team (SWAT) was dressed in black military-style clothing, armed with firearms as well as submachine guns. As Weiner entered the Wendy's parking lot, he observed the defendant exit a black Volkswagen. Gonzalez matched the general description that had been given to Weiner. Officer Weiner proceeded to explode a grenade type device for the purpose of distracting Gonzalez while the officers and agents rushed him at gun point, ordered him out of the vehicle, placed him in handcuffs and forced him to the ground. This "distraction device" is *202 the same as a grenade, except it "only" emits a loud noise and a big flash of light. Weiner did not see Gonzalez commit any crime, or even act suspiciously. Gonzalez did not resist when he was detained. Immediately after Gonzalez was taken down, the officers began to search his vehicle.
After the search, Dennison was taken to the Wendy's restaurant and she identified Mike as her supplier as he lay on the ground in handcuffs. She had not previously identified Mike to the officers and agents. She was then driven away from the scene. No weapons were found after the search of Gonzalez and his vehicle. Gonzalez remained handcuffed throughout the remainder of the encounter with the police during which heroin was found in his car.
After a review of all the events that led up to Gonzalez's arrest, the trial court granted Gonzalez's motion to suppress. The State then filed this appeal, contending that the trial court erred as a matter of law in suppressing the heroin seized and the statements Gonzalez made to the police because the evidence was obtained from a valid investigatory stop and it was based upon probable cause under the totality of the circumstances. Gonzalez counters that the trial judge did not err because his detention constituted an arrest and that arrest was not based on probable cause. We fully agree with Gonzalez.
The facts in the record and the testimony at the suppression hearing clearly reflect that Gonzalez was not simply detained, he was subjected to a full-blown arrest of the type one would expect surrounding the capture of a dangerous terrorist. When combined with a SWAT team converging on a lone, unarmed individual having lunch at Wendy's, the net result is more akin to Iraq than the United States of America. An investigatory stop is not generally accompanied by a stun grenade, followed by an assault SWAT team operation whereby an individual is thrown to the ground at gunpoint, and handcuffed faced down on a parking lot. At that point, the individual has effectively been placed under arrest even if not told he has been placed under arrest. See London v. State, 540 So.2d 211, 212 (Fla. 2d DCA 1989). Our review of the record leaves no doubt that this was an arrest.
Furthermore, the testimony at the suppression hearing supports Gonzalez's position and the trial court's ruling that the officers lacked probable cause to arrest him in the Wendy's parking lot. Without confirming that Gonzalez was "Mike," and that he had drugs in his possession, the police could not have had probable cause to make this arrest. The police here found the heroin after Gonzalez was taken down, handcuffed and arrested. In addition, Dennison identified Gonzalez after the arrest had been made and the search of Gonzalez's vehicle had begun. Although we appreciate the difficult and dangerous work that police officers do on a daily basis, it appears that the officers jumped the gun in making the arrest based solely on the description given to them by Dennison. See Kimball v. State, 801 So.2d 264 (Fla. 4th DCA 2001); Miller v. State, 780 So.2d 151 (Fla. 2d DCA 2000).
Accordingly, we find no error in the trial court's order suppressing Gonzalez's statements and the contraband found in his car.
Affirmed.