**UNITED STATES of America,
Plaintiff,**

v.

**James CARR, SR., Defendant.**

**No. 3:04cr030(1).**

United States District Court,
S.D. Ohio,
Western Division.

June 28, 2005.

Sheila Gay Lafferty, United States Attorney's Office, Dayton, OH, for Plaintiff.

Aaron G. Durden, Lawrence Joseph Greger, Greger Law Office, Dayton, OH, for Defendants.

## DECISION AND ENTRY OVERRULING IN PART AND OVERRULING, AS MOOT, IN PART DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (DOC. # 53); DECISION AND ENTRY SUSTAINING GOVERNMENT'S MOTION FOR A STATUS CONFERENCE (DOC. # 66); DECISION AND ENTRY OVERRULING, AS MOOT, GOVERNMENT'S MOTION TO CORRECT TRANSCRIPT (DOC. # 67); CONFERENCE CALL SET

RICE, District Court.

Defendant James Carr, Sr. ("Defendant" or "Carr"), is charged in the Superseding Indictment (Doc. # 25) with three counts of bank fraud, in violation of 18 U.S.C. § 1344, and one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 371. The Defendant has filed a motion, requesting that the Court suppress the evidence that was seized on February 6, 2004, when he was arrested and when he and an apartment at 5522 Autumn Woods Drive, Trotwood, Ohio, were searched.[1]

See Doc. # 53. On November 29, 2004, and February 1, 2005, the Court conducted an oral and evidentiary hearing on the Defendant's motion. The parties have filed their post-hearing memoranda. See Docs. ## 63–65. In ruling on the Defendant's motion, the Court initially sets forth its factual findings, following which it turns to the parties' arguments. However, before ruling upon the Defendant's request to suppress evidence, the Court will rule upon the Government's Motion to Correct Transcript (Doc. # 67).

During the November 29, 2004, evidentiary hearing, Defendant's counsel was cross-examining Special Agent Bradley Mercer ("Mercer") of the United States Secret Service ("USSS") about the decision of the United States not to indict the Defendant, under 18 U.S.C. § 513, for manufacturing, uttering and possessing counterfeit commercial checks in September, 1999.[2] In particular, Defendant's counsel asked Mercer whether Assistant United States Attorney Sheila Lafferty ("Lafferty") had told him about that decision before the criminal complaint charging Defendant with such an offense had been issued.[3] Transcript of November 29, 2004, Evidentiary Hearing (Doc. # 61) at 72–73. The Government objected to that question, which resulted in a sidebar con-

---

1. In his motion, Carr also requested that the Court suppress any statements he may have made on February 6; however, he did not give a statement to police on that date. In addition, Defendant requested therein that the Court suppress the evidence which was seized in September, 1999, from the residences at 37 Ventura Avenue, and 1239 S. Broadway Street, both in Dayton. However, the Government has indicated that it will not use any of the evidence seized from those locations. Therefore, the Court overrules, as moot, Defendant's Motion to Suppress Evidence (Doc. # 53), as it relates to statements and to the evidence seized from the residences at 37 Ventura Avenue, and 1239 S. Broadway Street, in 1999.

2. As is explained below, Mercer had executed an affidavit which led to the issuance of a criminal complaint and arrest warrant for Carr, as well as the subsequent discovery of the evidence which the Defendant has requested the Court to suppress. That warrant authorized the Defendant's arrest for, inter alia, manufacturing, uttering and possessing counterfeit commercial checks in September, 1999.

3. Mercer testified that Lafferty told him that the Defendant would not be indicted for the incidents occurring in September, 1999, at the time this matter was presented to the Grand Jury, rather than before the criminal complaint had been issued. Doc. # 61 at 74.

ference between the Court and counsel. *Id.* at 73. According to the transcript, Lafferty indicated, during that conference, that "[i]t was never our intention to indict him on these charges...." *Id.* The United States has filed a motion, requesting that the Court correct that statement in the transcript, by adding the word "not" between "intention" and "to." *See* Doc. # 67.[4]

A transcript of proceedings certified by the court reporter is "deemed prima facie a correct statement of the testimony taken and proceedings had." 28 U.S.C. § 753(b). Courts have held that, since the transcript is only prima facie correct, it may be corrected. *United States v. Bergmann*, 836 F.2d 1220 (9th Cir.1988); *United States v. Smith*, 433 F.2d 149 (5th Cir.1970); *United States v. Carter*, 347 F.2d 220 (2d Cir. 1965).

Herein, the Court need not decide whether the Court Reporter inadvertently neglected to record the word "not," as Lafferty suggests in her affidavit (Doc. # 72), or whether Lafferty unintentionally omitted that word while she was speaking.

Simply stated, the context in which the sidebar conference occurred and its content convince this Court that Lafferty *did not mean to say* that the Government never intended to indict the Defendant on charges pertaining to manufacturing, uttering and possessing counterfeit commercial checks in September, 1999, regardless of what she actually said. It bears emphasis that the statements of counsel are not evidence. Moreover, given the Indictment herein, it is apparent that the Government did not mean to concede that it never intended to prosecute Defendant for the incidents allegedly occurring in September, 1999. Therefore, the Court does not consider Lafferty's statement, assuming the transcript to be an accurate report, a concession of that fact by the Government. Accordingly, the Court overrules the Government's Motion to Correct Transcript (Doc. # 67), as moot.[5]

On February 6, 2004, Mercer executed an affidavit and drafted a criminal complaint, which were taken to Magistrate Judge Sharon Ovington, who signed the complaint and issued a warrant authoriz-

---

**4.** In its Motion to Correct Transcript (Doc. # 67), the Government identified language it was seeking to have corrected and the transcript in which that language appeared; however, it neglected to inform the Court where in that transcript the pertinent language was located. Therefore, the Court directed the Government to file a document specifying the page on which that language appears and an affidavit in support of its request. *See* Doc. # 71. In response thereto, the Government has submitted Lafferty's affidavit (Doc. # 72), with which it supports its motion and identifies the relevant page of the transcript.

**5.** The Government's request to correct the transcript is also moot, because the Court rejects the Defendant's argument that his arrest violated the Fourth Amendment, even if Mercer's affidavit established probable cause to believe that, in September, 1999, he manufactured, uttered or possessed counterfeit commercial checks, because the Government

never intended to prosecute him for such an offense. The Court does not accept the factual predicate of Defendant's argument (i.e., that the Government never intended to prosecute Defendant for the offense allegedly occurring in September, 1999), given that Mercer testified to the contrary. *See* Doc. # 61 at 74; Transcript of February 1, 2005, Hearing (Doc. # 62) at 142–43. In addition, the legal predicate, that an arrest supported by probable cause violates the Fourth Amendment as a result of a lack of intent to prosecute, would seem to fly in the face of the objective standard of that Amendment. *See Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (holding that the decision to stop an automobile comports with the Fourth Amendment where the police have probable cause to believe that a traffic violation has occurred regardless of any subjective motivations and emphasizing that subjective intentions play no role in the Fourth Amendment reasonableness calculus).

ing officers to arrest Carr.[6] After obtaining the arrest warrant, Mercer, along with Special Agent William Shink ("Shink") of the USSS and Detective William Breisch ("Breisch") of the Dayton Police Department, went to Defendant's apartment at 5522 Autumn Woods Drive.[7] Carr answered their knock, and Shink said they needed to talk. After the officers had been invited inside, they arrested and handcuffed Carr and read him the *Miranda* warnings. In addition, the officers searched the Defendant, finding what has been described as a crack pipe in one of his pockets.

After Carr had been secured and the *Miranda* rights had been read to him, Shink asked him if the officers could search his apartment. The Defendant gave his consent to their search; however, he also cautioned Shink that he did not believe that they would find anything. At that point, Shink began to search the master bedroom, and Mercer returned to his vehicle to obtain a "consent to search" form. Breisch remained with Carr. Mercer presented that form to the Defendant, who refused to sign it. Carr indicated that, although the officers had his consent to search the apartment, he was unwilling to sign anything relating to it, since he did not live there. As a consequence, the officers decided to stop the search and to secure a search warrant. Therefore, Mercer and Shink took Carr to the Federal Building, where Shink could process the Defendant and Mercer could seek a search warrant. Breisch remained at 5522 Autumn Woods Drive to secure that location while the warrant was obtained. After

Mercer had obtained a search warrant from Judge Ovington, the search resumed.

The evidence which was seized by Shink during the allegedly consensual, pre-warrant search is set forth in inventories, which are Government's Exhibits 1 and 3. The inventory of evidence that was seized when the search warrant was executed is Government's Exhibit 2. In its post-hearing memorandum, the Government has conceded that the search warrant violated the rule established by the Supreme Court in *Groh v. Ramirez*, 540 U.S. 551, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (holding that a search warrant that utterly failed to describe the persons or things to be seized was invalid on its face, notwithstanding that requisite particularized description was provided in search warrant application which had not been incorporated into the warrant), and that, therefore, the items seized when that warrant was executed "will not be used." Doc. # 63 at 2, n. 1.[8]

In their post-hearing memoranda, the parties address two discrete issues, to wit: 1) whether the warrant issued for Defendant's arrest on February 6, 2004, was supported by probable cause; and 2) whether the pre-warrant search of 5522 Autumn Woods Drive was consensual. As a means of analysis, the Court will address those two arguments in the above order.

In determining whether the warrant authorizing the Defendant's arrest was supported by probable cause, the Court will initially set forth the standards it must apply when determining whether the warrant authorizing the arrest of an individual is supported by probable cause, following

6. Mercer's affidavit, the criminal complaint and the arrest warrant for Carr are Defendant's Exhibit A.

7. The three had looked for Carr at a different location, before going to the address on Autumn Woods.

8. Since the Government does not intend to use the evidence which was seized when the search warrant was executed at 5522 Autumn Woods Drive (which is listed in Government's Exhibit 2), the Court overrules, as moot, Defendant's Motion to Suppress Evidence (Doc. # 53), as it relates to those items.

which it will apply those standards to the warrant authorizing Carr's arrest.

In *United States v. Smith,* 182 F.3d 473 (6th Cir.1999), the Sixth Circuit reviewed the principles which a court must apply when determining whether a warrant is supported by probable cause:

> The Fourth Amendment, which states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation," U.S. CONST. amend. IV, requires that probable cause be determined "by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out federal crime." *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948). In order for a magistrate to be able to perform his official function, the affidavit must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant. *Whiteley v. Warden,* 401 U.S. 560, 564, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). Probable cause is defined as "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir.1990). It requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates,* 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A warrant must be upheld as long as the magistrate had a "substantial basis for ... conclud[ing] that a search would uncover evidence of wrongdoing...." *Id.* at 236, 103 S.Ct. 2317. *See also United States v. Finch,* 998 F.2d 349, 352 (6th Cir.1993).

*Id.* at 476–77. In *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court stressed that the existence of probable cause must be determined from the totality of the circumstances. In *Gates,* the Supreme Court noted that "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that [the individual to be arrested has committed or is committing a crime]." *Id.* at 238, 103 S.Ct. 2317. When determining whether an affidavit established the existence of probable cause to believe that an individual has committed or is committing an offense, this Court must examine the totality of those circumstances in a "realistic and commonsense fashion." *United States v. Van Shutters,* 163 F.3d 331, 336 (6th Cir.1998), cert. denied, 526 U.S. 1077, 119 S.Ct. 1480, 143 L.Ed.2d 563 (1999). Of course, this Court also must give great deference to the determination of probable cause made by Judge Ovington who issued the arrest warrant. *United States v. Allen,* 211 F.3d 970 (6th Cir.) (*en banc*), cert. denied, 531 U.S. 907, 121 S.Ct. 251, 148 L.Ed.2d 181 (2000); *United States v. Akram,* 165 F.3d 452, 456 (6th Cir.1999). *See also, United States v. Graham,* 275 F.3d 490, 501 (6th Cir.2001) (indicating that a magistrate's finding of probable cause will not be set aside, unless it was arbitrarily made).

 Where, as in the present case, oral testimony was not presented to the magistrate who issued the warrant, the existence of probable cause to support that warrant must be ascertained exclusively from the four corners of the affidavit. *See e. g., Whiteley v. Warden,* 401 U.S. 560, 565 n. 8, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *United States v. Vigeant,* 176 F.3d 565, 569 (1st Cir.1999); *United States v. Etheridge,* 165 F.3d 655, 656 (8th Cir. 1999); *United States v. Weaver,* 99 F.3d 1372, 1377 (6th Cir.1996). The warrantless arrest of an individual does not violate the

Fourth Amendment, as long as officers have probable cause to believe that the individual is committing or has committed an offense and the arrest occurs in a public place. *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *United States v. Dotson*, 49 F.3d 227 (6th Cir.), *cert. denied*, 516 U.S. 848, 116 S.Ct. 141, 133 L.Ed.2d 87 (1995). Accordingly, in the absence of exigent circumstances, the Fourth Amendment prohibits the arrest of an individual in his home (a private place), without a warrant. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Since the Government has not demonstrated that exigent circumstances existed, the arrest of the Defendant in his residence was lawful, *only* if Mercer's affidavit established probable cause to believe that he had committed or was committing an offense.[9]

The criminal complaint charged the Defendant with one count of manufacturing, uttering and possessing counterfeit commercial checks in September, 1999, in violation of 18 U.S.C. § 513, and one count of conspiring to manufacture, utter and possess counterfeit commercial checks on or about January 24, 2004, in violation of 18 U.S.C. § 371.[10] As a means of analysis, the Court initially decides whether Mercer's affidavit established probable cause to believe that Carr had committed the 1999 offense. If it concludes that the affidavit did not, it will turn to the question of whether that affidavit established probable cause to believe that Carr had committed the 2004 conspiracy.

With respect to the charge that Carr possessed counterfeit checks in September, 1999, Mercer indicates in his affidavit that in March, 1999, officers of the Dayton and Miami Township Police Departments developed information that the Defendant was the kingpin of a counterfeit commercial check ring. Agents of the USSS became involved in the investigation of Carr in August of that year. In September, 1999, state and federal officers conducted a surveillance/undercover operation, during which an undercover informant told officers that he was in contact with Ernest Ferguson ("Ferguson"). Ferguson, in turn, had told the informant that he could obtain counterfeit checks. To that end, Ferguson went to 37 Ventura Avenue in Dayton, where he met with Carr. After leaving that location, Ferguson joined the informant at the Universal One Credit Union, where Ferguson gave the informant a counterfeit check in the amount of $9,869.23, drawn on National City Bank. The informant passed the counterfeit check at that location.[11] Ferguson then returned to the residence at 37 Ventura Avenue and was arrested when he left that address. After being taken into custody, Ferguson told officers that he had gotten the counterfeit check which the informant had passed from Carr.[12]

---

9. In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court modified the exclusionary rule "so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Id.* at 905, 104 S.Ct. 3405. Although the Supreme Court has held that the principles established in *Leon* are also applicable to warrants authorizing the arrest of an individual (*Arizona v. Evans*, 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995)), this Court does not apply those principles herein, since it concludes that the arrest warrant for Defen-

dant was, indeed, supported by probable cause.

10. The charges set forth against Carr in the Superseding Indictment (Doc. # 25) differ from those which were included in the criminal complaint.

11. Officers subsequently retrieved that check.

12. Mercer's affidavit also states that officers were able to secure search warrants for 37 Ventura and 1239 S. Broadway, where counterfeit checks and other evidence of a coun-

Applying the standards which are set forth above, the Court concludes that the foregoing information contained in Mercer's affidavit established probable cause to believe that Carr had committed the offense of possessing a counterfeit commercial check in September, 1999. Officers were able to retrieve the counterfeit check that Ferguson had given to the informant immediately before the latter cashed it at the Universal One Credit Union. Therefore, the only question is whether Mercer's affidavit established probable cause to believe that Ferguson had obtained that check from Carr (i.e., less than prima facie proof of that fact but more than suspicion). Ferguson told officers that he had obtained the check from the Defendant. That statement is confirmed by the fact that Carr had been at 37 Ventura Avenue, where Ferguson had gone after telling the informant that he could get counterfeit checks, and from where Ferguson left immediately before he and the informant had gone to the Universal One Credit Union to cash the check.

Based upon the foregoing, the Court concludes that Mercer's affidavit established probable cause to believe that Carr had committed the offense of possessing counterfeit commercial checks in September, 1999.[13] That conclusion means that the Court cannot suppress the crack pipe which was seized from Carr upon his arrest. *See United States v. Montgomery*, 377 F.3d 582, 586 (6th Cir.2004) (reiterating that under the "search-incident-to-a-lawful-arrest exception to the warrant requirement, a law enforcement officer may conduct a full search of an arrestee's person incident to a lawful custodial arrest") (internal quotation marks and citation omitted), *cert. denied*, 543 U.S. 1167, 125 S.Ct. 1347, 161 L.Ed.2d 143 (2005). Whether the evidence which was seized after Carr's arrest and before the search warrant had been obtained is dependent upon whether Carr consented to the search which resulted in the seizure of that evidence. The Court begins its analysis of

---

terfeiting ring was uncovered. In determining whether Mercer's affidavit established probable cause to believe that Carr had committed the offense of manufacturing, possessing and uttering counterfeit commercial checks in September, 1999, the Court will *not* consider the fact that officers obtained those search warrants or the evidence which was seized when those warrants were executed. The Defendant included in his motion the request that the Court suppress the evidence that was seized from those locations in 1999. The Government has indicated that it will not attempt to use any of that evidence at Carr's trial. *See* Footnote 1, *supra*. Indeed, the Government declined to introduce any evidence regarding those searches, or the search warrants and affidavits in support thereof. It is axiomatic that in determining whether an affidavit establishes probable cause, a court must remove the tainted information from it (i.e., the portions of the affidavit which contain information that was obtained as a result of earlier violations of the Fourth Amendment). *United States v. Jenkins*, 396 F.3d 751, 757–59

(6th Cir.2005); *United States v. Shamaeizadeh*, 80 F.3d 1131, 1136 (6th Cir.1996). Since the Government has refused to defend the legality of the 1999 searches or even to introduce evidence pertaining to them, the Court is compelled to assume that those searches violated the Fourth Amendment and, thus, has removed information pertaining to them from Mercer's affidavit, before determining whether the information which remains establishes probable cause.

**13.** Given the Court's conclusion that Mercer's affidavit established probable cause to believe that the Defendant had committed the offense of possessing counterfeit commercial checks in September, 1999, it is not necessary to decide whether that affidavit also established probable cause to believe that Carr committed the offense conspiring to possess counterfeit checks in January, 2004, since Fourth Amendment jurisprudence does *not* require law enforcement officers to have probable cause to believe that a suspect has committed more than one offense before they can arrest him.

that question by setting forth the applicable legal standards.

▌ In *United States v. Wellman*, 185 F.3d 651 (6th Cir.1999), the Sixth Circuit restated the principles which are applicable to the question of whether a person has validly consented to a search:

When seeking to justify a search based on consent, the government has the burden of showing by a preponderance of the evidence that the consent was freely and voluntarily given and was not the result of coercion, duress, or submission to a claim of authority. *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). The voluntariness of the consent is determined by the "totality of the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

*Id.* at 656–57. In *United States v. Carter*, 378 F.3d 584 (6th Cir.2004) (*en banc*), the Sixth Circuit reiterated that consent to search is effective only if voluntarily and freely given and stressed that it can be "in the form of words, gesture or conduct." *Id.* at 587 (internal quotation marks and citation omitted). Consent is not coerced merely because a person giving consent was in custody at that time. *United States v. Watson*, 423 U.S. 411, 424, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). In determining whether consent was voluntarily and freely given, the Court must examine the totality of all the circumstances. *United States v.*

*Mendenhall*, 446 U.S. 544, 557, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (plurality opinion). The Government has the burden of proving by the preponderance or greater weight of the evidence that consent was voluntarily and freely given, as opposed to being the product of coercion or duress. *United States v. Matlock*, 415 U.S. 164, 177–178, n. 14, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).[14]

Herein, the Court concludes that Carr voluntarily and freely gave the officers consent to search the apartment at 5522 Autumn Woods Drive. After Carr had been arrested and handcuffed, Shink asked him whether they (the officers) could search the apartment. Carr indicated that they could, although he warned Shink that they would not find anything. There was absolutely no evidence that any pressure, coercion or duress was exerted upon Carr in order to secure his consent. On the contrary, Shink testified that he did not coerce the Defendant.

Accordingly, the Court overrules the Defendant's Motion to Suppress Evidence (Doc. # 53), as it relates to the evidence seized from the Defendant and his apartment on February 6, 2004, before the search warrant had been obtained.

Based upon the foregoing, the Court overrules in part and overrules, as moot, in part Defendant's Motion to Suppress Evidence (Doc. # 53). It overrules that motion as it relates to the crack pipe that was seized from the Defendant when he was arrested and the items listed on Government's Exhibits 1 and 3.[15] The Court over-

---

**14.** The Defendant argues that the Government's obligation is to provide clear and positive testimony. *See* Doc. # 64 at 9. This Court cannot agree. The Supreme Court has stressed that the burden of proof in suppression matters is always preponderance of the evidence. *Matlock*, 94 S.Ct. at 996, n. 14 (noting that "the controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence"). *See also, Colorado v. Connelly*, 479 U.S. 157, 168–69, 107 S.Ct.

515, 93 L.Ed.2d 473 (1986); *Nix v. Williams*, 467 U.S. 431, 444, n. 5, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

**15.** The inventory which is Government's Exhibit 1 indicates that it is composed of four pages; however, the copy introduced into evidence by the Government is only three pages (i.e., pages "1 of 4," "2 of 4," and "3 of 4"). The Court will permit the Government to introduce the items listed on the three pages of the copy of the document it introduced into

rules that motion as moot, as it relates to statements by the Defendant, evidence seized in 1999 from the residences at 37 Ventura Avenue, and 1239 S. Broadway Street, and evidence seized from 5522 Autumn Woods Drive in 2004, when the search warrant was executed.

The Government has filed a motion, requesting that the Court schedule a status conference. *See* Doc. # 66. The Court sustains that motion. Counsel listed below should not that the Court has scheduled a telephone conference call on Tuesday, June 28, 2005, at 4:45 p.m., for the purpose of selecting a trial date for this prosecution.

evidence, since it denied Defendant the ability to examine witnesses on any items which may

have been listed on page "4 of 4."