FILED

03/12/2019

Clerk of the
Appellate Courts

IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
April 4, 2018 Session

## STATE OF TENNESSEE v. JEROME ANTONIO MCELRATH

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Obion County**
**No. CC-15-CR-71;72        Jeff Parham, Circuit Court Judge**

_____

**No. W2015-01794-SC-R11-CD**
**No. W2015-01958-SC-R11-CD**
(consolidated on appeal)

_____

HOLLY KIRBY, J., concurring in part and dissenting in part.

I write separately in this case because I concur with part of the majority's analysis and disagree with other parts of it.

I am pleased to concur in the majority's adoption of the *Herring* good-faith exception to the exclusionary rule.

Unfortunately, I must respectfully dissent from the majority's conclusion that neither arrest in this case comes within the good-faith exception. After ostensibly adopting *Herring*, the majority analyzes the facts in this case in a manner that is inconsistent with the analysis in *Herring*. As explained below, the very facts in *Herring* counsel an outcome different than that reached by the majority. I am concerned that the majority's analysis will leave trial courts uncertain as to whether this Court actually adopted *Herring* and unclear on how to apply the good faith exception in future cases.

In *Herring v. United States*, 555 U.S. 135 (2009), the Court addressed the good-faith exception in the context of record-keeping errors by police. In that case, an investigator with the Coffee County Sheriff's Department was told by a dispatcher with the Dale County Sheriff's Department that Dale County computer records showed defendant Herring as having an outstanding arrest warrant. A Coffee County police officer then arrested Herring. A search incident to his arrest revealed methamphetamine and a pistol in his possession. *Herring*, 555 U.S. at 137.

Minutes later, the Dale County sheriff's employee compared their computer record with their physical warrants file and discovered that, five months earlier, the warrant

listed in the computer records had been recalled. *Id.* at 137-38. The Dale County sheriff's employee immediately called the Coffee County Sheriff's Department to correct the misinformation. By that time, however, Herring had already been arrested and searched. *Id.* at 138.

The record in *Herring* showed that the Dale County Sheriff's Department maintained physical files containing arrest warrants as well as computer records of those warrants. "For whatever reason," the Court said, those two files did not accurately correspond. *Id.* at 138. This created a situation in which the dispatcher was unaware that computer records she referenced in response to the Coffee County call were incorrect. *Id.* at 137-38.

In *Herring*, the fact that the recordkeeping system of the Dale County Sherriff's Department was internally inconsistent was not deemed by the Court to be reckless or deliberate; it amounted to negligence. *Id.* at 144. The majority in the instant case acknowledges that this was "a fact that the *Herring* Court considered 'crucial to [its] holding that this error is not enough by itself to require 'the extreme sanction of exclusion.''" (quoting *Herring*, 555 U.S. at 140).

The facts in this case are eerily similar to those in *Herring*. In *Herring*, records of warrants were kept in two places; a physical file and a computer file, and those records were inconsistent. *Herring*, 555 U.S. at 137-38. In this case, there were two records as well; the barred list and the list containing the names of persons removed from the barred list, both maintained by the Union City Police Department. As in *Herring*, those lists were internally inconsistent. At the suppression hearing in *Herring*, an officer testified that he never had reason to question information about a Dale County warrant, and both warrant clerks testified that they could not remember a problem like this ever happening. *Id*. at 147. Similarly, in the instant case, Lieutenant Dowell testified at the suppression hearing in this case that "99 percent of the time, this [list] is correct and there's no need to go behind [the clerk]."

As in *Herring*, Lieutenant Dowell's unrebutted testimony shows that the error on the police department list was in fact a "simple, isolated oversight or inadvertence," *State v. Lowe*, 552 S.W.3d 842, 860, i.e., mere negligence. Inexplicably, the majority simply dismisses this proof by characterizing it as a "brief comment."

The pivotal question in *Herring* was whether flawed recordkeeping within a police department triggered the exclusionary rule when inaccurate information from that flawed system was communicated to and relied upon by the officer who arrested the defendant. The same question is presented in the instant case. *Herring* concluded that the arresting officer was without fault, and that the conduct of the Dale County Sheriff's Department amounted to mere negligence. The majority in the instant case also finds the arresting officer was without fault. Nevertheless, despite the similarity in the facts, the majority in

this case concludes that the conduct of the Union City Police Department was "sufficiently deliberate" to trigger the exclusionary rule, "the kind of 'systemic error or reckless disregard of constitutional requirements' against which *Herring* cautioned." (quoting *Herring*, 555 U.S. at 144, 147)

What raises the inaccurate police recordkeeping in this case to that level? Instead of a fulsome explanation, the majority in this case engages in overstatement, leveraging an isolated error into a "systematic" one by describing an omission on a list as "a system inherently flawed by the maintenance of separate lists and the lack of any regular process by which to reconcile the two."[1] From this the majority arrives at the rather remarkable conclusion that the Union City police department engaged in "reckless" or even "deliberate" misconduct.

The pertinent facts in this case are indistinguishable from those in *Herring*. *Herring* involved two files on warrants; the error in the computer records was not caught until the physical file was checked. In the instant case, the error on the barred list was not caught until the other list was checked. As in *Herring*, nothing in this record would support a conclusion that the omission was "recurring," nor did the trial court make any finding to that effect.[2]

The majority points to the fact that almost five years elapsed in this case before the error was caught, as opposed to five months in *Herring*, as further indication that this was "systematic" error. Quite the opposite; coupled with Lieutenant Dowell's testimony that the lists were correct 99% of the time, the longer length of time before discovery of the error in this case shows even more emphatically that the error was "isolated negligence attenuated from the arrest." *See Herring*, 555 U.S. at 137.

Moreover, the majority appears to say that *Herring* is not applicable in this case because here, unlike *Herring*, the inaccurate information was maintained within the same police department to which it was later communicated. That is a distinction without a difference.[3] As the majority acknowledges, nothing in *Herring* indicates that the

---

[1] The obvious question arises, what if there had been only *one* list, and it contained an inadvertent omission? Under the majority's analysis, would that too have constituted a "system inherently flawed" amounting to "reckless" or "deliberate" misconduct?

[2] The fact that Justice Lee approves of the majority's analysis of the facts in her separate opinion proves the point. In her separate opinion, Justice Lee asserts that this Court should apply the exclusionary rule to police errors that are merely negligent and "reject the *Herring* exception." It is unsurprising, then, that she would praise the majority's analysis as "a good roadmap for trial courts," since the majority applies the exclusionary rule to a police error that was merely negligent, consistent with rejection of the *Herring* exception.

[3] The majority refers to "ease of access to information within the same department" as the reason why this distinction in the facts is significant. This is slightly puzzling. In *Herring*, as in this case, both

-3-

Supreme Court intended such an interpretation of the exclusionary rule. An isolated internal inconsistency in records is still mere negligence, whether the isolated inaccuracy is in the records of the same police department or a neighboring one.

To be sure, *Herring* is clear that not "all recordkeeping errors by the police are immune from the exclusionary rule. . . . If the police have been shown to be reckless in maintaining a warrant system, or to have knowingly made false entries to lay the groundwork for future false arrests, exclusion would certainly be justified under our cases should such misconduct cause a Fourth Amendment violation." *Id*. at 146.[4] But the record in this case contains no indication of either recklessness or deliberate falsification. As in *Herring*, "when police mistakes are the result of negligence such as that described here, rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not 'pay its way' . . . . In such a case, the criminal should not 'go free because the constable has blundered.'" *Id*. at 147-48 (internal citations omitted).

The majority's application of the collective knowledge doctrine muddles the picture even more. The "collective knowledge" or "fellow officer" doctrine is generally understood to allow the corporate or collective knowledge of an officer, obtained from other reliable sources, to establish reasonable suspicion or probable cause for a stop or arrest. The United States Supreme Court first discussed this doctrine in the context of probable cause to support an arrest. *See Whiteley v. Warden*, 401 U.S. 560 (1971). The Court extended the doctrine to encompass reasonable suspicion to briefly detain a person in an attempt to obtain further information in *United States v. Hensley*, 469 U.S. 221 (1985). In both cases, the collective knowledge doctrine was applied in a *permissive* manner. Likewise, this Court has also historically applied the collective knowledge doctrine in a permissive manner. *See State v. Clayton,* 535 S.W.3d 829, 849 (Tenn. 2017); *State v. Bishop*, 431 S.W.3d 22, 36 (Tenn. 2014) ("When determining whether the police possessed probable cause, the courts should consider the collective knowledge that law enforcement possessed at the time of the arrest, provided that a sufficient nexus of communication existed between the arresting officer and any other officer or officers who possessed relevant information. Such a nexus exists when the officers are relaying

---

of the lists in question were housed within the same department. In *Herring*, unlike this case, the arresting officer was in a neighboring county police department. However, in neither case was the error caught *by the arresting officer*. Consequently, whether or not the arresting officer is in the same police department as the erroneous records would appear to make no difference.

[4] Two years later, the Court reaffirmed *Herring* in *Davis v. U.S.*, 564 U.S. 229 (2011), where the Court reiterated that "[w]hen the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." *Id.* at 238 (citing *Herring,* 555 U.S. at 144). "But when the police act with an objectively 'reasonable good faith belief' that their conduct is lawful, or when their conduct involves only simple, 'isolated' negligence, the "'deterrence rationale loses much of its force,'" and exclusion cannot 'pay its way.'" *Id.* at 238 (internal citations omitted).

-4-

information or when one officer directs another officer to act."); *State v. Echols*, 382 S.W.3d 266, 278 (Tenn. 2012) (the existence of probable cause depends upon the accumulated information known to law enforcement only if there exists a sufficient nexus of communication between the arresting officer and another officer with knowledge of the information in question).

Relying on *People v. Ramirez*, 668 P.2d 761(Cal. 1986), the majority would now apply the collective knowledge doctrine in a *prohibitive* fashion, relying on language in *Ramirez* stating: "The 'fellow officer' or 'collective knowledge' rule cannot function solely permissively, to validate conduct otherwise unwarranted; the rule also operates prohibitively, by imposing on law enforcement the responsibility to disseminate only accurate information." *Id.* at 764-65.

Importantly, the majority quotes with approval language from *Ramirez* that *automatically* imputes to the arresting officer knowledge of the law enforcement agency's clerical error, regardless of whether the error is isolated and inadvertent: "[W]e cannot permit the arresting officer to rely with impunity on his fellow officers' errors of omission, but must impute their accurate knowledge to him." *Id*. *Ramirez*, then, follows a strict standard not allowing for *any* assessment of the level of fault regarding the inaccurate information; if law enforcement records contain an error, knowledge of the error is automatically imputed to the arresting officer, and the exclusionary rule is invoked.[5]

*Ramirez* was decided long before *Herring*. The Court in *Herring* expressly considered the actions of <u>all</u> of the officers involved, in both Coffee County and Dale County, but its analysis on this issue does not resemble the approach now adopted by the majority in this case. *Herring* explicitly determined that the investigator from Coffee County did not act improperly by relying on the inaccurate information and that the employees from the Dale County Sheriff's Office were merely negligent—not reckless or deliberate—in failing to update the computer with accurate arrest warrant information. *Herring*, 555 U.S. at 140. *Herring* specifically rejected the *Ramirez* approach now apparently embraced by the majority, stating that defendant Herring's "claim that police negligence automatically triggers suppression cannot be squared with the principles underlying the exclusionary rule, as they have been explained in our cases." *Id.* at 147.

---

[5] Similarly, the majority quotes with approval an assertion in Defendant McElrath's brief that also would invoke the exclusionary rule when an arrest is based on flawed law enforcement information, regardless of the level of fault: "[T]o allow a police officer to arrest an individual based upon a list that the police officer's own agency creates, maintains and has exclusive control over and then claim good faith based upon *negligently* created information from the list would create a dangerous precedent." (Emphasis added).

At least one California appeals court has recognized that the approach in *Ramirez*, adopted by the majority herein, is not consistent with *Herring*:

In *Ramirez,* the court suppressed evidence from a booking search after it was determined that the warrant in the computer system providing the basis for the defendant's arrest had been recalled months earlier. Not only does [*People v.*] *Troyer*, *supra*, 51 Cal.4th [599] at page 613, 120 Cal.Rptr.3d 770, 246 P.3d 901 [(2011)], instruct that we must look to what the officers knew at the time of the search, but it would appear subsequent United States Supreme Court precedent has entirely undermined *Ramirez's* efficacy. (*See Herring v. United States* (2009) 555 U.S. 135, 146–148, 129 S.Ct. 695, 172 L.Ed.2d 496 [holding that exclusionary rule suppression should not apply where law enforcement personnel were negligent in failing to expunge from their computer system a warrant that led to the defendant's arrest and a search incident thereto].)

*People v. Pou*, 216 Cal. Rptr. 3d. 920, 928 n.3 (2017) (alterations in original).

In the face of *Ramirez*'s inconsistency with *Herring*, the majority nevertheless approves the language in *Ramirez* that automatically imputes to the arresting officer knowledge of a law enforcement clerical error, even when the error is isolated and inadvertent. Does the majority expect trial courts applying its ruling to do the same?

As the Supreme Court reiterated in *Herring,* evidence should be suppressed *"*only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Herring*, 555 U.S. at 143 (internal citations omitted). The majority points to no evidence in this record showing that Officer Cummings knew, or could be charged with knowing, that the stop and subsequent search of the defendant was unconstitutional under the Fourth Amendment. The error of the Union City Police Department arose "from nonrecurring and attenuated negligence" and "is thus far removed from the core concerns that led" to the adoption of the exclusionary rule. *Id.* at 144. "Where the police conduct was no more intentional or culpable than this," the exclusionary rule should not work to suppress the evidence found on the defendant. *Id.*

Since the majority's analysis of the facts in this case is at odds with *Herring*'s analysis of strikingly similar facts, I do not know how trial courts are to apply this Court's ruling going forward. Did the majority actually adopt *Herring*, or did it adopt something else? We must all wait and see.

Accordingly, I concur in the majority's adoption of the *Herring* good faith exception, but I respectfully dissent from the majority's retreat from *Herring* in its conclusion that neither arrest in this case comes within the good-faith exception.

_____
HOLLY KIRBY, JUSTICE